[Civ. No. 44354. First Dist., Div. One. Sept. 7, 1978.]

NUMA GOODMAN, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

James C. Hooley, Public Defender, and Harold G. Friedman, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Real Party in Interest.

**OPINION**

**NEWSOM, J.—** This case presents the question of whether the intentional disfigurement of a person's face permits prosecution for the statutory crime of mayhem. It arises under the following circumstances, extracted from the preliminary transcript and presumed to be true for the purpose of resolving the legal issue before us.

Petitioner Numa Goodman had lived with the victim, Ms. Belcher, for about five years. On December 26, 1977, after a separation of several weeks, petitioner visited Ms. Belcher at her apartment. An argument ensued; petitioner, drawing a kitchen knife from under his jacket, stabbed Ms. Belcher twice in the left chest area, twice on the arm, and once on the face.

It is the latter wound with which we are concerned, since it forms the basis for the mayhem charge.

Petitioner was held to answer on a charge of violating Penal Code section 245, subdivision (a), assault with a deadly weapon, and entered a plea of guilty to that count. When the People moved the mayhem charge

to trial, petitioner sought, and we issued, an alternative writ of mandamus to consider the question whether, as a matter of law, a five-inch wound inflicted on the victim's face, resulting in no functional impairment, but in probable permanent disfigurement, could support a charge of mayhem. In the discussion which follows, a precise description of the wound in question should be kept in mind. The hearing judge's description, based upon his observation, is as follows: "THE COURT: And then the witness is indicating—is this scar that I am looking at, a scar about three to three and a half inches long, right at the end of the right eyebrow, running from about two inches above the eyebrow to below the eye. As a matter of fact, it's about four or five inches long. It runs into the cheek. [Deputy District Attorney]: And down almost parallel to the mouth? THE COURT: Not parallel. Does it go parallel to the mouth? Oh, it does, it swings in there. All right. Thank you."

The statutory definition of mayhem is given in Penal Code section 203 as follows: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

The section was enacted in 1872 and amended in 1873-1874 to cover one who "cuts" rather than "cuts out" the tongue.

In attempting to determine which activities the Legislature intended to encompass under section 203, we are guided by the rule expressed in Penal Code section 4, which provides: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

As required by settled principles of statutory construction, we will presume that in enacting section 203, the Legislature was familiar with the common law concept of mayhem, and that, when it couched its enactment in common law language, it intended to carry over such rules as were part of the common law crime into statutory form. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 625 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *Baker* v. *Baker* (1859) 13 Cal. 87, 95-96.)

Mayhem in early common law was committable only by infliction of an injury which substantially reduced the victim's formidability in combat. (Cf. *United States* v. *Cook* (D.C.Cir. 1972) 462 F.2d 301; *People* v. *Green*

(1976) 59 Cal.App.3d 1, 2-3 [130 Cal.Rptr. 318].) Thus, "if the injury be such as disfigures him only, without diminishing his corporeal abilities, it does not fall within the crime of mayhem." (1 East, Pleas of the Crown 393.) ▇ ·It requires no specific intent to maim or disfigure, the necessary intent being inferable from the types of injuries resulting from certain intentional acts. (*People* v. *Sears* (1965) 62 Cal.2d 737, 745 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Wright* (1892) 93 Cal. 564, 566 [29 P. 240]; *People* v. *Nunes* (1920) 47 Cal.App. 346, 348 [190 P. 486]; 1 Witkin, Cal. Crimes (1963) § 282, p. 262.) As the court said in *People* v. *Nunes, supra*: "If a person unlawfully strikes another, not with the specific intent to commit the crime of mayhem, and the blow so delivered results in the loss or disfigurement of a member of the body of the assaulted party or in putting out his eye, the crime is nevertheless mayhem." (47 Cal.App. at p. 349.)

▇ The common law definition, however, was gradually expanded in consequence of a series of statutes, the most notable of which, the so-called Coventry Act, broadened the concept of mayhem to include mere disfigurement without an attendant reduction in fighting ability. The move to recognize mere disfigurement as mayhem stemmed from an injury inflicted on Sir John Coventry, an Englishman, who was assaulted on the streets of London by enemies who slit his nose in revenge for insults uttered against them in Parliament.

The Coventry Act, which read in part as follows: " 'By this statute it is enacted that if any person shall, of malice aforethought and by lying in wait, unlawfully cut out or disable the tongue, put out an eye, slit the nose, cut off a nose or lip, or cut off or disable any limb or member of any other person, with intent to maim or disfigure him, such person, his counselors, aiders, and abetters, shall be guilty of felony without benefit of clergy.' 4 Bl. Com. 206." (Annot. (1922) 16 A.L.R. 955, 957), did not displace the common law of mayhem, the gist of which was malicious maiming, but provided an increased penalty for intentional maiming and for the first time extended the crime to include mere disfigurement.

Cases decided under the Coventry Act, and statutes like our own which obviously derive from it, have found mayhem for disfigurement alone only where the injury is permanent.[1] Thus, the cutting of a lip requiring several stitches but which would heal without serious scarring was not mayhem. (*State* v. *Raulie* (1936) 40 N.M. 318 [59 P.2d 359].)

[1]Compare Perkins on Criminal Law (2d ed.) section 8, pages 186-187, for a collection of modern cases.

Whether a permanent injury would be insufficient, if correctible by plastic surgery is, according to Perkins, "perhaps still in doubt." (Perkins on Criminal Law (2d ed.) § 8, p. 187.) An early Texas case, cited by Perkins, contains an interesting if less than incisive dictum to the effect that if a defendant had bitten off a portion of the victim's under lip, depriving him of the lip, "and the piece had been put back and made to grow, . . . it would still be maiming under the law." (*Slattery* v. *The State* (1874) 41 Tex. 619, 621.)

We have been unable to find any California decision directly holding that a scarring wound to a member of the body which, unlike the eyes, ears, nose, lips or tongue, has no distinctly separate function, constitutes mayhem. In *People* v. *Vigil* (1966) 242 Cal.App.2d 862, 864 [51 Cal.Rptr. 111], knife slashes on the thigh and hand were held to constitute mayhem, but the court appears to have concluded that the victim had suffered permanent limitation of motion in one hand as a result of the injury. Again, in *People* v. *Vera* (1955) 131 Cal.App.2d 669 [281 P.2d 65], an atrocious series of assaults upon a small child which neither dismembered nor permanently disfigured the victim led to a mayhem conviction. The challenge on appeal, however, was not directed to the sufficiency of the evidence and the case is of little precedential value for our purposes.

The facts before us show a victim whose face is terribly marred, probably for life, with all attendant emotional and even economic disabilities.

While not every visible scarring wound can be said to constitute the felony crime of mayhem, we decline to say as a matter of law that the trier of fact could not reasonably conclude under Penal Code section 203 that mayhem was committed here.

The petition is denied and the alternative writ is discharged.

Racanelli, P. J., and Elkington, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied November 1, 1978.