[Crim. No. 10354. Third Dist. June 16, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDERICK RODMAN NEWBLE, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, James T. McNally and Lisa Lewis Dubois, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**CARR, J.**—Defendant appeals from the judgment entered after the trial court[1] found him guilty of violating section 203, Penal Code[2] and granted him five years' probation on condition he spend nine months in the county jail.[3]

The primary issue is whether the infliction of a three-inch facial laceration which extends from the bottom of the left ear to just below the chin, which is likely to leave a permanent scar, constitutes disfigurement of a member of the body within the meaning of section 203.

In support of his assertion that such conduct is not mayhem, defendant contends: 1) the statutory definition of "mayhem" is so unconstitutionally vague that it fails to provide sufficient notice of the prohibited conduct, and 2) the head should not be considered a "member" of the body.

The facts demonstrate the potential for violent encounter when romance wanes and is displaced by hostility. Defendant and Berline Kizzie, the victim herein, had lived together for several months. Upon their separation, Berline saw defendant quite frequently but the relationship was not friendly and defendant had on two occasions threatened Berline, the last threat being "I'm going to get you, and I'm going to fix you where won't nobody have you."

On November 4, 1978, Berline attended a party at the Hideaway Club in Marysville. She arrived about 2 a.m. and had a drink.

Defendant testified on his own behalf; there is a wide variance between his testimony and that of Berline, he stating she called him

---

[1] Defendant waived his right to a jury trial.
[2] References are to the Penal Code.
[3] The court found him not guilty of the charged assault with a deadly weapon (§ 245, subd. (a)).

names all evening,[4] and she testifying they did not speak until he prepared to leave at which time defendant began swearing at her and calling her bad names. When he persisted in such conduct after she told him to leave her alone, she became angry and either dropped her drink glass or threw it at defendant. Defendant then grabbed her by the hair and turned her around. When she put her hand to her face, she found she had been cut.

She was treated at the emergency hospital for a three-inch laceration with a maximum depth of one-half inch on the left side of her face. The injury, caused by a slash from a sharp object (the evidence indicates defendant's fingernail file), severed a small portion of one of the salivary glands. A doctor testified the wound required double layer suturing and was likely to leave a scar because of the victim's Negroid skin.

## I

We consider initially the contention that the head is not a member of the body.

Defendant asserts the issue of whether the head is a "member" of the body within the meaning of section 203 is unsettled. As we explain, we find the head is a member of the body within the meaning of the mayhem statute and thereby settle the issue.

Section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

In *Goodman* v. *Superior Court* (1978) 84 Cal.App.3d 621 [148 Cal.Rptr. 799], the court inferentially concluded the head is a "member" of the body within the meaning of section 203 by holding a facial scar of four to five inches long, extending from above the eyebrow to the cheek and with no functional impairment could reasonably be found by the trier of fact to be mayhem within section 203.

*Goodman, supra*, involved a pretrial writ. In denying the defendant's petition for mandamus to declare as a matter of law that the injury involved did not constitute mayhem, the court acknowledged the absence of any California case law "directly holding that a scarring wound to a

---

[4]Technically it was early morning, but one tends to think of parties as evening events.

member of the body, which, unlike the eyes, ears, nose, lips or tongue, has no distinctly separate function, constitutes mayhem." (At p. 625.)

However, in *People v. Page* (1980) 104 Cal.App.3d 569 [163 Cal. Rptr. 839] defendants were found to have committed mayhem by forcibly tattooing "the letters 'M.F.F.M.' (representing a club slogan, Misfits Forever, Forever Misfits) over an area measuring four by two and one-half inches on [the female victim's] left breast. They then tattooed 'Property of G.P.' (Gordon Page) over an area one inch by eight to ten inches on her abdomen, and [the codefendant] tattooed the words 'Mine Too,' with an arrow, on her left thigh." (*Id.*, at p. 572.) A plastic surgeon testified that the tattoos on the victim's breast and abdomen were permanent, that an attempt to remove the tattoos would "leave permanent scarring for life." (*Id.* at p. 578.)

Defendant urged that tattooing of a woman's abdomen or breast could not constitute mayhem since the torso is not a member of the body within the meaning of section 203. Finding the argument "ingenuous but not persuasive," the court explained, "[t]he term 'member' is variously defined as 'A part or organ of the animal body, especially a limb' (Funk & Wagnalls Standard College Dict. (1974)); as a 'general term applied to any integral part or vital organ of an organized animal body, or, more widely, to any integral or distinguishable constituent part of a whole which is considered as organic ...' (The Random House Dict. of the English Language (1966)); and as 'a bodily part or organ ... *specif*: a part (as a limb) that projects from the main mass of the body' (Webster's Third New Internat. Dict. (1965))." The court concluded that there might be a question about the abdomen qualifying, but clearly a female breast was a body member by any definition, dictionary, common or legal.

While the court in *Page* did not elaborate on the criteria employed in arriving at this conclusion, we submit the head, the uppermost extremity of the body, certainly projects from the mass of the body (Webster's Third New Internat. Dict. (1965)) and well qualifies as a member of the body.

Defendant urges the statutory delineation of types of injury to specific parts of the head demonstrates a legislative intent that unenumerated parts of the head were not meant to be included within the scope of mayhem. Further, that under the maxim of *expressio unius est exclusio alterius* the enumeration of things coming within the operation of the

statute necessarily involves the exclusion of things not expressly enumerated. Since the statute specifically sets forth eyes, ears, tongue, nose and lips, other parts of the head are excluded.

█ However, *"expressio unius est exclusio alterius* is no magical incantation, nor does it refer to an immutable rule." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657].) "In *People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 477 [93 Cal.Rptr. 132], we find the following pertinent statements: 'Like other rules of construction, the maxim *expressio unius est exclusio alterius* gives way where it would operate contrary to the legislative intent to which it is subordinate or where its application would nullify the essence of the statute. [Citations.] Likewise the rule is inapplicable where no reason exists why persons or things other than those enumerated should not be included, and manifest injustice would follow by not including them. [Citation.] ... The rule as expressed in the maxim also fails if such interpretation leads to absurd and undesirable consequences.'" (*People* v. *Rojas* (1975) 15 Cal.3d 540, 551 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127].)

The phraseology of section 203 should be viewed in reference to its progenitors as we presume under settled principles of statutory construction that in enacting section 203 "the Legislature was familiar with the common law concept of mayhem, and that, when it couched its enactment in common law language, it intended to carry over such rules as were part of the common law crime into statutory form." (*Goodman* v. *Superior Court, supra,* 84 Cal.App.3d at p. 623.)

The origin of the crime of mayhem is briefly described in the following account:

"To cut off, or permanently to cripple, a man's hand or finger, or to strike out his eye or foretooth, were all mayhems at common law, if done maliciously, because any such harm rendered the person less efficient as a fighting man (for the king's army). But an injury such as cutting off his ear or nose did not constitute mayhem, according to the English common law, because it did not result in permanent disablement, but merely disfigured the victim. This was corrected by an early English statute. It seems that an assault was made upon Sir John Coventry on the street by persons who waylaid him and slit his nose in revenge for obnoxious words uttered by him in Parliament. This emphasized the weakness of the law of mayhem, and the so-called 'Coventry

Act' was passed. This provided the penalty of death for any one who should, with malice aforethought, 'cut out or disable the tongue, put out an eye, slit the nose, cut off a nose or lip, or cut off or disable any limb or member of any subject; with the intention in so doing to maim or disfigure him.' This statute did not displace the English common law of mayhem (malicious maiming) but provided an increased penalty for *intentional* maiming and for the first time extended the crime to include disfigurement (if intentional). Hence a true definition of the crime according to the English law must be in some such form as this: *Mayhem is malicious maiming or maliciously and intentionally disfiguring another.*" (Perkins on Criminal Law (2d ed. 1969) ch. 2, § 8, pp. 185-186; original italics; fns. omitted.)

Although it is apparent section 203 contains verbal vestiges of English Common law and the Coventry Act, "the modern rationale of the crime may be said to be the preservation of the natural completeness and normal appearance of the human face and body, and not, as originally, the preservation of the sovereign's right to the effective military assistance of his subjects." (LaFave & Scott, Criminal Law (1972) ch. 7, § 83, pp. 614-615.)

▇ In light of the stated rationale of the crime of mayhem we conclude there is no tenable reason for distinguishing prominent facial wounds to a nose, ear or lip, from comparable wounds which happen to miss one of those areas of the head specifically mentioned in section 203. The opposite conclusion would lead to a result which is undesirable, if not absurd.[5]

We hold that the head is "member" of the body within the meaning of section 203.

## II

▇ Also without merit is defendant's contention the term "disfigures" is unconstitutionally vague; that its common definition is necessarily subjective and therefore the statute provides insufficient notice of the proscribed conduct.

[5]The fact that various parts of the head are mentioned in section 203 is probably attributable more to historical happenstance than to a current legislative intent to exclude from the purview of mayhem areas of the head not specifically mentioned. If Sir John Coventry had been injured as the victim in the instant case was injured, it is possible the issue under discussion would not have arisen in the context of this case.

In *Solander* v. *Municipal Court* (1975) 45 Cal.App.3d 664, at page 667 [119 Cal.Rptr. 609], we stated: ■ "It is well settled that as a part of procedural due process, a criminal statute must be so definite and certain that it gives fair warning, not necessarily with mathematical exactitude, but sufficient to inform a person of ordinary or average intelligence, of what acts or omissions it declares to be prohibited and punishable. (*People* v. *McCaughan, supra*, 49 Cal.2d 409, 414 [317 P.2d 974]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal. Rptr. 1, 503 P.2d 257]; *People* v. *Hallner* (1954) 43 Cal.2d 715 [277 P.2d 393]; *In re Joseph G.* (1970) 7 Cal.App.3d 695, 702 [87 Cal.Rptr. 25]; *Tip Top Foods, Inc.* v. *Lyng* (1972) 28 Cal.App.3d 533, 547 [104 Cal.Rptr. 718].)

"Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible. (*In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *Ali* (1967) 66 Cal.2d 277, 280 [57 Cal. Rptr. 348, 424 P.2d 932].) A statute will not be declared void as indefinite if it contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combated in language giving fair notice of the practices to be avoided. (*People* v. *Hallner, supra*, 43 Cal.2d 715; *Tip Top Foods, Inc.* v. *Lyng, supra*, 28 Cal.App.3d 533.)"

The word "disfigure" is defined as: "to make less complete, perfect, or beautiful in appearance or character." (Webster's Third New Internat. Dict. (1971) p. 649.)

The courts in *Goodman* v. *Superior Court, supra*, 84 Cal.App.3d 621, and *People* v. *Page, supra*, 104 Cal.App.3d 569, considered the concepts of disfigurement within section 203. In *Goodman*, the court examined cases under statutes similar to our own and found that mere disfigurement constitutes mayhem "only where the injury is permanent. Thus, the cutting of a lip requiring several stitches but which would heal without serious scarring was not mayhem. (*State* v. *Raulie* (1936) 40 N.M. 318 ....)" (84 Cal.App.3d at p. 624, fn. omitted.)

In *People* v. *Page, supra*, 104 Cal.App.3d at page 578, the court in considering the purpose of the mayhem statute and the concept of disfigurement stated: "The law of mayhem as it has developed protects the integrity of the victim's person. [Citation.] Whether or not it would be a defense to the crime of mayhem that an injury is totally remediable by modern techniques of plastic surgery [citations], an injury which

leaves permanent scarring of that [the victim's] sort is clearly 'disfigurement' within the meaning of the statute [citation], and the jury could hardly have reached any different conclusion."

■ We conclude the meaning of "disfigure" in the context of section 203 is sufficiently definite and certain to inform a person of ordinary intelligence what acts are prohibited. As to defendant, section 203 is sufficiently certain to put him on notice that slashing the victim's face with a sharp instrument so as to leave a permanent three-inch scar could reasonably be found to be disfigurement.

Defendant contends it is still uncertain "what degree of disfigurement *is* sufficient to support a conviction for mayhem." He notes the statement by the court in *Goodman* that "not every visible scarring wound can be said to constitute the felony crime of mayhem." (84 Cal.App.3d at p. 625.) We concur in this analysis, but, like the *Goodman* court find the trier of fact could reasonably have concluded that under section 203 mayhem had been committed by defendant and we decline to disturb that factual finding and determine as a matter of law that a three-inch permanent facial scar is not disfigurement within the meaning of section 203.

The judgment is affirmed.

Puglia, P. J., and Blease, J., concurred.