[No. B034178. Second Dist., Div. Seven. Sept. 24, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY G. PITTS, Defendant and Appellant.

**COUNSEL**

Andrew E. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Roy C. Preminger and Joseph P. Furman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Defendant appeals his convictions for mayhem and assault and the sentence imposed by the trial court. We affirm the convictions. However, we find the trial court erred in sentencing the defendant. We reverse the sentence and remand the matter to the trial court with directions.

### FACTS AND PROCEEDINGS BELOW

The principal prosecution witness was the victim, Victoria W. Ms. W. testified she was walking through a park in the nighttime when defendant grabbed her by the back of her hair and forced her into the women's bathroom. The bathroom was dimly lit but she could recognize defendant and another man already in the bathroom, William Randoll. Ms. W. knew defendant because they had attended school together. Defendant demanded she undress and when she refused defendant beat her until she fell to the floor. Defendant and Randoll then raped her and defendant forced her to orally copulate him. When another man, Mark Kelly, walked into the bathroom, Ms. W. grabbed some of her clothes and ran out of the bathroom into the park.

Defendant chased Ms. W. and caught her in the middle of the park. He threw her down, sat on her stomach and began to hit her. At this point Ms. W. pulled a box cutter from her back pocket in an attempt to defend herself. Defendant grabbed the box cutter from Ms. W. and began slashing her with it. Ms. W. suffered multiple slash wounds on her chest nearly severing her left breast. Finally, when another man came to see what was taking place defendant released Ms. W. and fled.

Defendant was arrested shortly afterwards a few blocks from the park. Defendant had cuts on his arm and neck. Although he was not bleeding, he was carrying a bloodstained shirt and bloodstains were found on his underwear. Randoll was also arrested a few blocks from the park at about the same time as defendant. Randoll had a scratch on his neck and blood on his shirt.

The testimony of Mark Kelly from defendant's previous trial was read to the jury after the court determined Kelly could not be located despite the prosecution's reasonable diligence. Kelly testified he saw Ms. W. orally copulating defendant in the park bathroom and, later, saw defendant fighting with Ms. W. in the park and saw that Ms. W. was bleeding.

The defense sought to prove it was Randoll, not defendant, who beat and slashed Ms. W. Randoll, who had previously pled guilty to raping Ms. W.,

testified it was he who had assaulted her in the park bathroom and, when she pulled out the box cutter, he took it from her and slashed her with it. When defendant came into the bathroom to see what all the noise was about, Randoll slashed defendant with the box cutter. He and defendant struggled, then Randoll broke free and ran. Defendant testified in his own behalf and related essentially the same version of events as described by Randoll.

The jury hung on the rape charge but found defendant guilty of mayhem and assault by means of force likely to produce great bodily injury and with a deadly weapon. The jury found that in committing mayhem defendant personally used a deadly and dangerous weapon, a box cutter, and that he personally and intentionally inflicted great bodily injury on the victim. The jury further found that in committing the assault defendant personally and intentionally inflicted great bodily injury on the victim.

Following the jury's verdicts, defendant waived his constitutional rights and admitted a prior felony conviction.

The court sentenced defendant to a 16-year prison term calculated as follows:

| | | |
|-------|------------|-------------------------------------------|
| (a) | mayhem: | 6 years upper term |
| | | 3 years great bodily injury enhancement |
| | | 1 year deadly weapon enhancement |
| (b) | assault: | 1 year (3-year midterm with 2 years stayed) |
| (c) | prior felony: | 5 years |

The court ordered all terms to run consecutively for a total of 16 years.

DISCUSSION

I. THE TRIAL COURT PROPERLY EXERCISED ITS DISCRETION IN EXCLUDING EVIDENCE OF THE VICTIM'S ADJUDICATION FOR MURDER.

█ Before calling the victim to the stand, the prosecutor asked the trial court for a ruling that her juvenile court adjudication for murder could not be used by the defense to impeach her testimony. The court granted the motion under Evidence Code section 352 on the ground the murder, committed in 1975, was too remote in time to be used for impeachment.

In a previous appeal, in which we reversed Pitts's convictions on other grounds, the trial court excluded the victim's murder adjudication and we

held the exclusion of this juvenile adjudication was a proper exercise of the trial court's discretion under Evidence Code section 352. In the present appeal defendant argues that on retrial the court did not exercise discretion in excluding the murder adjudication but, instead, excluded it on the basis of an inflexible rule of the trial court's own making that any crime more than 10 years old cannot be used for impeachment. Defendant's argument is based on the following remarks by the trial court in ruling on the motion to exclude the juvenile adjudication.

"THE COURT: There must come a time when the Court has to draw a line as to remoteness.

"The Court has always felt that ten years is a reasonable length of time for someone to be saddled with that aspect, and one must throw the saddle off at some time and become unsaddled by one's past acts.

"As we now know, none of us are perfect, but there comes a time when the law must forget and forgive, and ten years seems to be a reasonable period.

"If, indeed, if it were vice versa with Mr. Pitts, the Court would again draw ten years as a reasonable period so that he could not be impeached if the positions were reversed."

We do not view the trial court's remarks as stating an absolute, ironclad rule from which it would never budge no matter what evidence or arguments were presented. To the contrary the court listened attentively to the arguments by defendant in this case but found no basis for changing its view that when the question is purely a matter of time, ten years is a reasonable place to draw the line.[1]

As we noted in *People* v. *Burns* (1987) 189 Cal.App.3d 734, 738 [234 Cal.Rptr. 547], "[t]here is no consensus among courts as to how remote a conviction must be before it is too remote. [Citation]" In our view establishing 10 years as the presumptive cut-off date for prior convictions *is* an exercise of discretion. It is preferable that the trial court have in mind a presumptive standard of remoteness rather than have no concept of remoteness and issue inconsistent rulings each time the issue comes up. Therefore, we conclude the court properly exercised its discretion in excluding the victim's juvenile adjudication of murder.

---

[1]There was no contention in this case the 10-year-old murder adjudication was necessary to show a pattern of behavior relevant to the witness's credibility. The trial court did allow impeachment on the bases of convictions in 1979 for burglary, in 1985 for theft and in 1987 for robbery. (Cf. *People* v. *Muldrow* (1988) 202 Cal.App.3d 636, 648 [248 Cal.Rptr. 891].)

Even if the trial court abused or failed to exercise its discretion, the error was harmless. Assuming murder is the type of crime that can be used for impeachment, it is less relevant to dishonesty than burglary, theft and robbery which were used to impeach the witness's testimony. The fact the murder was committed 11 years earlier, when the witness was 15 or 16 years of age, also detracts from its value as impeachment evidence. It is not reasonably probable the jury would have reached a different, more favorable, verdict had it known about the juvenile adjudication. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

At our request, counsel briefed and argued the question whether, as a matter of law, a juvenile adjudication of felonious conduct is inadmissible for impeachment purposes. (See *People* v. *Hoffman* (1926) 199 Cal. 155, 159 [248 P. 504]; *In re Nash* (1964) 61 Cal.2d 491, 494-495 [39 Cal.Rptr. 205, 393 P.2d 405]; *People* v. *Jackson* (1980) 28 Cal.3d 264, 311 [168 Cal.Rptr. 603, 618 P.2d 149].) If the long line of cases holding juvenile adjudications cannot be used for impeachment are still good law then the adjudication of murder in the present case had to be excluded as a matter of law and there was nothing for the trial court to exercise discretion about. On the other hand, language in article I, section 28 of the California Constitution (adopted as part of Proposition 8 in 1982) raises some doubt about whether juvenile adjudications remain inadmissible as a matter of law. Article I, section 28, subdivision (f) of the California Constitution provides: "Any prior felony conviction of any person in any criminal proceeding, *whether adult or juvenile*, shall subsequently be used without limitation for purposes of impeachment . . . ." (Italics added.)

It is possible to construe California Constitution article I, section 28, subdivision (f) to mean that for purposes of impeachment, a juvenile adjudication of felonious conduct shall be treated as if it were a felony conviction in a criminal proceeding. One appellate court has rejected this interpretation, *People* v. *Sanchez* (1985) 170 Cal.App.3d 216, 218 [216 Cal.Rptr. 21], and our Supreme Court has not ruled on the issue. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 847, fn. 10 [218 Cal.Rptr. 57, 705 P.2d 380].)

The question whether article I, section 28, subdivision (f) of the California Constitution permits the use of juvenile adjudications of felonious conduct for purposes of impeachment is of great interest and importance. Nevertheless, we have determined we need not resolve that question in the present case. In the previous appeal we held exclusion of the victim's juvenile adjudication was within the trial court's discretion. ■ Under the law of the case doctrine, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any

subsequent retrial or appeal in the same case.' " (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 301 [253 Cal.Rptr. 97, 763 P.2d 948] [quoting 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 737, pp. 705-707].) ██ In the first trial, the victim's murder adjudication was excluded from evidence. This exclusion was raised as an error on appeal and we held the trial court had properly exercised its discretion. Thus, the law of the case doctrine applies to this appeal from the retrial.

The law of the case doctrine is not an inflexible rule nor is it jurisdictional. It is a matter of appellate court policy and there are exceptions to the rule which might apply to the present appeal. However, we believe it is appropriate to apply the doctrine in this case for the following reasons. On retrial the parties and the trial court treated the admissibility of the juvenile adjudication as a matter of trial court discretion. The effect of article I, section 28, subdivision (f) of the California Constitution was not argued by the parties nor considered by the court. Furthermore, despite the efforts of counsel for both parties, it has not been established for certain the victim was tried for murder in the juvenile court as opposed to the criminal court system (although we have assumed for the sake of argument the trial was in juvenile court). Finally, if we were to hold the juvenile adjudication should have been excluded as a matter of law we would reach the same result we reach in holding the court properly excluded the juvenile adjudication under Evidence Code section 352. (Cf. *Nally* v. *Grace Community Church*, *supra*, 47 Cal.3d at p. 302.)

## II. THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF KELLY BUT THE ERROR WAS HARMLESS.

██ The People were allowed to use the testimony of Mark Kelly from the previous trial on the ground Kelly was unavailable as a witness because he could not be located with the exercise of reasonable diligence. (Evid. Code, § 240, subd. (a)(5).)

██ Whether reasonable diligence has been shown is a factual question to be determined according to the circumstances of each case. (*People* v. *Enriquez* (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73].) And, while there is no mechanical check list to be followed, reasonable diligence clearly requires looking where it is likely the witness will be found. (*People* v. *Johnson* (1974) 39 Cal.App.3d 749, 757 [114 Cal.Rptr. 545]; and see *People* v. *Salas* (1976) 58 Cal.App.3d 460, 471 [129 Cal.Rptr. 871]; *People* v. *Ventura* (1985) 174 Cal.App.3d 784, 792-793 [220 Cal.Rptr. 269].)

Knowing Kelly's criminal record and proclivity for drug use, the logical place to look for him would be in the criminal justice system. The People's

investigator looked for Kelly's name in the municipal and superior court indices and the jail roster but did not find it.

Under the circumstances, this was not a reasonably diligent search. The investigator confined his search to the name Mark Kelly even though he knew Kelly had used the names Don Cullom and Mark Puddien as aliases. The investigator confined his search to Los Angeles County instead of checking neighboring counties. He failed to follow up on information that Kelly was a defendant in a criminal case in July 1986. He did not check the jail roster until just before trial and he never contacted Kelly's former probation officers to see if they knew Kelly's whereabouts.

■ Despite the absence of reasonable diligence, the admission of Kelly's former testimony was not prejudicial. Indeed it may have benefited defendant. Kelly was by no means a crucial witness for the prosecution. Furthermore, his previous felony conviction and his drug use undermined his credibility. The fact he did not appear as a witness may have further undermined his credibility in the eyes of the jury. As defendant himself concedes, "it is obvious that Kelly's testimony did not entirely captivate and sway the jury."

### III. The Trial Court Properly Admitted the Victim's Bloodstained Clothes and a Photograph of the Victim's Chest.

■ The admissibility of photographs and physical evidence lies in the sound discretion of the trial court. (*People* v. *Milan* (1973) 9 Cal.3d 185, 194 [107 Cal.Rptr. 68, 507 P.2d 956].) The exercise of that discretion will not be disturbed on appeal unless the trial court has exceeded the bounds of reason. (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].)

■ In this case the defendant was charged with mayhem. This required the prosecution to establish the defendant "maliciously deprive[d] a human being of a member of his body, or disable[d], disfigure[d], or render[ed] it useless . . . ." (Pen. Code, § 203.) Unlike battery or even murder, mayhem is by definition a gory, gruesome crime and the evidence necessary to prove it falls in the same category. The garments and photographs were not unduly gruesome given the nature of the crime.

### IV. The Trial Court Properly Instructed the Jury With Respect to Mayhem.

■ Defendant contends the trial court erred in failing to instruct the jury mayhem requires a specific intent to vex, annoy or injure and in failing

to instruct the jury it must agree on the specific act which constituted the mayhem.

Defendant's first contention is rejected in a line of cases going back nearly 100 years. (*People* v. *McKelvy* (1987) 194 Cal.App.3d 694, 702 [239 Cal.Rptr. 782]; *People* v. *Wright* (1892) 93 Cal. 564, 566 [29 P. 240].)

Defendant's second contention lacks merit because here only one act could have supported the mayhem conviction; the brutal slashing of the victim's chest with a box cutter, nearly severing the victim's left breast. (Cf. *People* v. *Schultz* (1987) 192 Cal.App.3d 535, 539-540 [237 Cal.Rptr. 513].)

## V. THE TRIAL COURT PROPERLY DENIED DEFENDANT'S *MARSDEN* MOTION.

We have reviewed the transcript of defendant's *Marsden* (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) motion and we agree with the trial court defendant failed to establish any basis for removing his court-appointed counsel.

## VI. THE TRIAL COURT ERRED IN IMPOSING DEFENDANT'S SENTENCE AND IN CALCULATING HIS CUSTODY AND CONDUCT CREDITS.

### A. *It Was Error to Enhance the Mayhem Sentence Under Both Penal Code Section 12022, Subdivision (b) and Penal Code Section 12022.7.*

 The trial court sentenced defendant to the upper term of six years on the mayhem conviction and then enhanced that sentence by imposing a consecutive term of three years for personal and intentional infliction of great bodily injury (Pen. Code, § 12022.7) *and* a consecutive term of one year for personal use of a dangerous weapon. (Pen. Code, § 12022, subd. (b).)

Penal Code section 1170.1, subdivision (e) provides in relevant part, "When two or more enhancements under Sections 12022 [and] 12022.7 . . . may be imposed for any single offense, only the greatest enhancement shall apply . . . ." Thus, it was error to impose enhancements on the mayhem conviction under both Penal Code sections 12022, subdivision (b), and 12022.7. Only the greatest enhancement, Penal Code section 12022.7, could have been imposed. (*People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 119 [212 Cal.Rptr. 888].) However, as we explain below, great bodily injury is an element of mayhem. Therefore, an *enhancement* for great bodily injury

cannot be imposed in this case. Only the one-year enhancement for personal use of a dangerous weapon is applicable here.

By its terms, Penal Code section 12022.7 precludes a great bodily injury enhancement where "infliction of great bodily injury is an element of the offense." As used in Penal Code section 12022.7 great bodily injury means "a significant or substantial physical injury."

■■■ Defendant was convicted of mayhem. Mayhem is defined in Penal Code section 203 as follows: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

It is beyond cavil that defendant committed mayhem on the victim in this case and inflicted great bodily injury. Defendant slashed the victim repeatedly with a box cutter, a razor-sharp instrument, and nearly severed her left breast. The People concede there was great bodily injury in this particular case, but argue it is possible in some cases to commit mayhem without inflicting great bodily injury. The People contend a slight cut on the tongue or an infinitesimal slit on the ear or lip would come within the definition of mayhem but would not constitute a "significant or substantial physical injury." Therefore, the People reason, great bodily injury is not an element of mayhem and the great bodily injury enhancement is applicable to this case.

The People cite no authority to support this argument and our research has disclosed none. On the contrary, our research discloses that from the early common law to modern California law, mayhem has been considered a cruel and savage crime.[2] This history of the offense of mayhem is set forth in detail in *Goodman* v. *Superior Court, supra,* 84 Cal.App.3d at pages 623-625 [148 Cal.Rptr. 799] and need not be repeated here. Suffice it to say the court's research amply supports its conclusion "not every visible scarring wound can be said to constitute the felony crime of mayhem." (*Id.* at p. 625.) ■■■ Accordingly, we find great bodily injury as defined in Penal

[2] Examples of injuries held to constitute mayhem include biting off part of the ear (*People* v. *Golden* (1881) 62 Cal. 542; a large cut on the left thigh and three or four cuts on the hands rendering them permanently impaired (*People* v. *Vigil* (1966) 242 Cal.App.2d 862, 863-864 [51 Cal.Rptr. 860]); ear sliced open and head cut—17 stitches required to close the wounds (*People* v. *Garcia* (1970) 5 Cal.App.3d 15, 18 [85 Cal.Rptr. 36]); 5-inch knife wound resulting in probable permanent disfigurement of the face (*Goodman* v. *Superior Court* (1978) 84 Cal.App.3d 621, 623 [148 Cal.Rptr. 799]); biting off half the victim's lower lip (*People* v. *Caldwell* (1984) 153 Cal.App.3d 947, 952 [200 Cal.Rptr. 508]); victim set on fire resulting in loss of a hand, a leg, both breasts and substantial scarring.

Code section 12022.7 is an element of mayhem and the enhancement for great bodily injury is inapplicable.

The People argue we should view the great bodily injury enhancement under Penal Code section 12022.7 as an enhancement of the assault conviction. Thus, the two enhancements would not be imposed for a single offense but rather for two separate offenses. We cannot take a view contrary to the facts. The People alleged the mayhem was committed with intent to inflict great bodily injury, the jury found this allegation to be true and the trial court specifically imposed the great bodily injury enhancement as part of the sentence on the mayhem conviction. There is no other way to view the matter. Furthermore, the assault conviction was already enhanced by the trial court under Penal Code section 12022.7. The People would have us view the sentence as imposing the same enhancement twice on one offense.

### B. *It Was Error to Impose a Consecutive Sentence for the Assault Conviction.*

 Defendant was convicted of both mayhem and assault based on one attack on one victim. As the People concede, "there was only one act" and imposition of a consecutive sentence for the assault violated Penal Code section 654. (*People* v. *Flowers* (1982) 132 Cal.App.3d 584, 588 [183 Cal.Rptr. 276].) "Where section 654 precludes multiple punishment and the trial court erroneously fails to stay the terms subject to section 654, the appellate court must stay the sentence on the lesser offenses while permitting execution of the greater offense consistent with the intent of the sentencing court." (*People* v. *Thompson* (1989) 209 Cal.App.3d 1075, 1080 [257 Cal.Rptr. 658].)[3]

### C. *The Court Erred in Calculating Defendant's Custody and Conduct Credits.*

 The undisputed evidence showed defendant was arrested on July 30, 1984, and had been continuously in custody as of the date of sentencing, January 6, 1988, a total of 1,255 days. The trial court's minute order and the abstract of judgment also reflect 1,255 days' credit but, erroneously, divide that figure into 837 days' custody and 418 days' good conduct. Defendant's conduct credits, to the extent he was eligible for them, should have been based on his days in custody. (Pen. Code, § 4019; see *In re Allen* (1980) 105 Cal.App.3d 310, 315 [164 Cal.Rptr. 319].) The computation is

---

[3] In light of our conclusion we do not reach defendant's claim the trial court erred in using the same facts to aggravate the mayhem count as it used to impose consecutive sentences for mayhem and assault.

complicated by the fact different formulas may apply to the time between defendant's arrest and the original imposition of sentence, reversed in November 1986, the time between reversal and new trial, etc. These are not computations this court is inclined to attempt. The trial court with the aid of the Department of Corrections is in a better position to ascertain the presentence credits to which defendant is entitled.

## DISPOSITION

The judgment is reversed as to the sentence, and the matter remanded to the trial court with directions to: (1) vacate the enhancement for great bodily injury (Pen. Code, § 12022.7), as to count 4; (2) stay the sentence on count 5 with the stay becoming permanent upon completion of the remainder of the sentence; (3) vacate the calculation of defendant's custody and conduct credits and, in consultation with the Department of Corrections, recalculate those credits based on 1,255 days in custody as of the date of sentencing. In all other respects the judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied October 23, 1990, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 20, 1990.