Robie, J.
*884 Mary H. was attacked and robbed at home in the early hours of the morning. A jury found defendants Heaven Leann Turner and Michael Benjamin Rafferty guilty of first degree robbery and found Turner guilty of mayhem as well. Defendants respectively raise several arguments on appeal.
In the published portion of this opinion, we reject Turner's instructional error claims. Turner argues the trial court prejudicially erred in failing to instruct the jury sua sponte that the infliction of great bodily injury is a required element to prove mayhem and that, like the disfigurement theory of mayhem, permanent injury is required to prove mayhem under the "slit of the lip" theory. In the unpublished portion of this opinion, we further reject Turner's arguments that: (1) defense counsel was ineffective for failing to request a modification of the mayhem instruction; (2) the prosecutor committed prosecutorial error during closing argument; (3) the prosecutorial error and the instructional error cumulatively violated her due process rights; (4)
*885 her sentence violates Penal Code[1] section 654 ; and (5) the trial court erred in denying her request to admit her whole interview with a police officer under Evidence Code section 356. We affirm the judgment after amending it to correctly reflect a consecutive sentence of 16 months for the robbery conviction.
Also in the unpublished portion of this opinion, we reject Rafferty's contention that the trial court abused its discretion in denying his motion for mistrial and conclude he forfeited his joinder in Turner's arguments. We, however, remand for the trial court to consider exercising its discretion to strike Rafferty's five-year enhancement under section 667, subdivision (a).
FACTUAL AND PROCEDURAL BACKGROUND
Because of the nature of the issues raised on appeal, we provide only a brief summary of the facts in the light most favorable to the judgments here. (See People v. Jennings (2010) 50 Cal.4th 616, 638-639, 114 Cal.Rptr.3d 133, 237 P.3d 474.) Any other facts pertinent to our disposition are contained in the discussion of defendants' contentions.
Mary H. bought a truck from Rafferty in October 2016. Rafferty asked for the truck back a few days later because Turner, his girlfriend, was upset about the sale; Mary refused to return it. Over the next couple of months, Rafferty and Turner made additional requests for return of the truck and Rafferty also asked Mary *299 for money he believed she owed him for the sale. One such return request occurred when Rafferty and Turner confronted Mary at her storage unit. Turner wanted to fight Mary and made threats. Mary declined to fight Turner and said her daughter was on the way. Turner responded "she didn't give an eff whose kid was -- you know, was around. She was going to kick [Mary's] ass." It is unclear how the altercation was resolved.
The bad blood between Turner and Mary was not limited to the truck purchase. Turner and Mary were also "having issues" about Turner's relationship with Rafferty because Mary felt Turner was not "treating him right."
In the early morning of December 4, 2016, Mary woke up to a scratching sound on the locked door of her bedroom. A few minutes later, Rafferty and Turner entered the bedroom with Rafferty shining a flashlight in Mary's eyes. Mary got out of bed and was "panic[ked] to get out of the room" because she "didn't want to be pinned in [her] room." Mary, who was unarmed, pushed against Turner to leave, but Turner did not budge.
*886 Turner pulled out a knife and cut Mary in the face. "She missed [Mary's] eye by an inch, and it went all the way down [her] upper lip and split [her] upper lip."[2] The cut "slit the front [of her lip] wide open." A police officer described it as a laceration starting on the left side of her nose, down her cheek, and across her upper lip that "flayed her lip open." Turner also broke Mary's front tooth and stabbed her in the left shoulder. Mary screamed for her roommate to help.
Turner yelled at Rafferty to grab the truck keys and other items from the bedroom. Rafferty did as he was told, but grabbed only Mary's backpack and her phone, accidentally leaving the keys behind. Turner and Rafferty then left.
Mary had to get "butterfly stitches" to her face. During her testimony before the jury, Mary explained that, although the injury had "healed very good," it left a visible scar on her lip and "if you look closely, there's a line on [her] face."[3] Mary also had to get the remaining part of her front tooth removed.
Turner was charged with first degree robbery, assault with a deadly weapon, and mayhem. She was also charged with great bodily injury allegations as to the robbery and assault with a deadly weapon charges. The jury found her guilty of mayhem and first degree robbery, but found her not guilty of assault with a deadly weapon. The jury further found not true the great bodily injury allegations. Rafferty was charged with and found guilty of first degree robbery.
DISCUSSION
I
Turner's Arguments
A
There Was No Instructional Error
The trial court instructed the jury with a modified version of CALCRIM No. 801 describing the elements of mayhem, as follows: "Defendant HEAVEN LEANN TURNER is charged in Count 3 with mayhem. [¶] To *887 prove that the defendant is guilty of this crime, the People must prove *300 that the defendant unlawfully and maliciously: [¶] 1. Permanently disfigured someone; [¶] OR, [¶] 2. Slit someone's lip. [¶] AND [¶] 3. The Defendant did not act in self-defense. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with unlawful intent to annoy or injure someone else. [¶] A disfiguring injury may be permanent even if it can be repaired by medical procedures."[4]
As we understand it, Turner essentially argues the trial court prejudicially erred by failing to instruct the jury sua sponte that: (1) great bodily injury is an element required to prove mayhem under either theory presented; and (2) like the disfigurement theory, permanent injury is an element required to prove mayhem under the slit of the lip theory. The People argue Turner waived the issue by failing to object to the instruction at trial. They further argue the instruction was sufficient because it tracked the statutory language of section 203 and no clarification or modification was requested.
We review the merits of the instructional error claim to determine whether the instruction was a correct statement of the law or affected Turner's substantial rights. ( People v. Hudson (2006) 38 Cal.4th 1002, 1011-1012, 44 Cal.Rptr.3d 632, 136 P.3d 168 [failure to request clarifying and amplifying instructional language does not preclude appellate review to determine whether an instruction was a correct statement of law]; People v. Ramos (2008) 163 Cal.App.4th 1082, 1087, 78 Cal.Rptr.3d 186 ["we may review any instruction which affects the defendant's 'substantial rights,' with or without a trial objection"].)
"We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' " ( People v. Ramos , supra , 163 Cal.App.4th at p. 1088, 78 Cal.Rptr.3d 186.) The trial court "has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested." ( People v. Wade (1959) 53 Cal.2d 322, 334, 1 Cal.Rptr. 683, 348 P.2d 116.) Generally, "it is enough for the court to instruct [on the elements of a crime] in the language of the statute when the defendant fails to request an amplification thereof." ( People v. Failla (1966) 64 Cal.2d 560, 565, 51 Cal.Rptr. 103, 414 P.2d 39.) "Even if such an instruction 'cannot be commended as a full or clear exposition of the meaning of the section of the code, still it cannot be said that it was error for the court in giving the law to *888 have conformed to the language of the code, and to have omitted what that code itself omits.' " ( People v. Reed (1952) 38 Cal.2d 423, 430, 240 P.2d 590.)
" 'Where an instruction on a particular point or points as given by the court is correct as far as it goes, and the only valid objection, if any, to it is that it is deficient or inadequate by reason of its generality, indefiniteness, or incompleteness, if defendant desires additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions on such point or points, he must properly request the same, otherwise error cannot be predicated upon the failure to give such additional instruction.' " ( People v. Reed , supra , 38 Cal.2d at p. 430, 240 P.2d 590.) "The defendant will not be heard to complain *301 where he has failed to request an amplification of an instruction [given in the language of the statute]." ( Ibid. )
Section 203 defines simple mayhem as follows: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." The statute "generally prohibits six injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) disfiguring someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip." ( People v. Santana (2013) 56 Cal.4th 999, 1003, 157 Cal.Rptr.3d 547, 301 P.3d 1157.)
"Mayhem, an older form of the word 'maim,' was at common law restricted to injuries that 'substantially reduced the victim's formidability in combat' [citation]; the rationale being to preserve the king's right to the military services of his subjects. Gradually, the crime evolved to include injuries that did not affect the victim's fighting ability. Our current mayhem statute is based upon the Coventry Act of 1670, which first broadened mayhem to include mere disfigurement. That statute imposed a sentence of death on any person who, with malice aforethought, 'cut out or disable[d] the tongue, put out an eye, slit the nose, cut off a nose or lip, or cut off or disable[d] any limb or member of any other person.' " ( People v. Keenan (1991) 227 Cal.App.3d 26, 33-34, fn. omitted, 277 Cal.Rptr. 687.)
"Though section 203 contains 'verbal vestiges' of the common law and the Coventry Act of 1670, ' "the modern rationale of the crime may be said to be the preservation of the natural completeness and normal appearance of the human face and body, and not, as originally, the preservation of the sovereign's right to the effective military assistance of his subjects." ' [Citations.] In other words, section 203 'protects the integrity of the victim's person.' " ( People v. Santana , supra , 56 Cal.4th at p. 1004, 157 Cal.Rptr.3d 547, 301 P.3d 1157.)
*889 "[S]ection 203 has remained unchanged since 1874, [but] cases have periodically clarified the statutory requirements for mayhem. For instance, with respect to a disabling injury, the victim's disability must be more than 'slight and temporary.' [Citation.] Similarly, case law has 'grafted' on to section 203 the requirement that a disfiguring injury be permanent [citations]; in that regard, 'an injury may be considered legally permanent for purposes of mayhem despite the fact that cosmetic repair may be medically feasible' [citations]. And finally, as used in section 203, the word 'maliciously' 'imports an intent to vex, annoy, or injure another person, or an intent to do a wrongful act.' " ( People v. Santana , supra , 56 Cal.4th at p. 1007, 157 Cal.Rptr.3d 547, 301 P.3d 1157.)
Turner posits Pitts is one such case law "graft," which requires the prosecution to prove great bodily injury as an element of mayhem under section 203 such that it must be included in the jury instruction. (Citing People v. Pitts (1990) 223 Cal.App.3d 1547, 273 Cal.Rptr. 389.) We disagree.
In Pitts , the Court of Appeal considered whether a sentence for mayhem could properly be enhanced for inflicting great bodily injury under section 12022.7 in connection with the crime. ( People v. Pitts , supra , 223 Cal.App.3d at pp. 1558-1559, 273 Cal.Rptr. 389.) The court concluded the enhancement was impermissible because *302 great bodily injury was an element of mayhem, and section 12022.7 did not apply when great bodily injury was an element of the underlying offense. ( Pitts , at p. 1559, 273 Cal.Rptr. 389 ; § 12022.7, subd. (g).)
In reaching that conclusion, the court rejected the People's argument that great bodily injury was not an element of mayhem because "a slight cut on the tongue or an infinitesimal slit on the ear or lip would come within the definition of mayhem but would not constitute a 'significant or substantial physical injury.' " ( People v. Pitts , supra , 223 Cal.App.3d at p. 1559, 273 Cal.Rptr. 389.) The court reasoned "that from the early common law to modern California law, mayhem has been considered a cruel and savage crime" and explained "the court's research amply supports [the] conclusion 'not every visible scarring wound can be said to constitute the felony crime of mayhem.' " ( Ibid. ) The Pitts court did not consider the adequacy of the mayhem jury instruction and whether great bodily injury is a necessary element of the offense in that context.
In 2006, CALCRIM No. 801 was revised to include serious bodily injury (not great bodily injury) as an element of mayhem, erroneously citing Pitts as authority for the addition. ( People v. Santana , supra , 56 Cal.4th at pp. 1007-1008, 157 Cal.Rptr.3d 547, 301 P.3d 1157.) Seven years later, our Supreme Court considered "whether CALCRIM No. 801 properly include[d] [the serious bodily injury] requirement as a necessary clarification of section 203" and concluded it did not. ( *890 Id. at p. 1001, 157 Cal.Rptr.3d 547, 301 P.3d 1157.) Although the ultimate holding in Santana does not bear on the issue at hand, our Supreme Court's analysis is instructive.
Our Supreme Court explained that nothing in section 203 suggests the injurious acts of "cutting or disabling the tongue and slitting the nose, ear or lip" "must involve protracted loss or impairment of function, require extensive suturing, or amount to serious disfigurement." ( People v. Santana , supra , 56 Cal.4th at p. 1010, 157 Cal.Rptr.3d 547, 301 P.3d 1157.) Thus, it "s[aw] no basis -- compelled either by case law or by the need to give jurors further guidance -- to superimpose a wholesale definition of 'serious bodily injury' ... in the instruction. By delineating the type of injuries that will suffice for mayhem, the Legislature itself established an injury's requisite level of seriousness in section 203, and when needed, subsequent cases have given further amplification. " ( Ibid. , italics added.)
We do not read Pitts to require a jury be instructed sua sponte that to find a defendant guilty of mayhem, it must find that he or she inflicted great bodily injury. We recognize Pitts held that great bodily injury is an "element" of mayhem ( People v. Pitts , supra , 223 Cal.App.3d at pp. 1559-1560, 273 Cal.Rptr. 389 ), but read Pitts to mean that the injuries specified in section 203 inherently constitute great bodily injury.
In enacting section 203, the Legislature was familiar with the common law concept of mayhem and knew the crime was considered a cruel and savage crime. (See Goodman v. Superior Court (1978) 84 Cal.App.3d 621, 623, 148 Cal.Rptr. 799 ["in enacting section 203, the Legislature was familiar with the common law concept of mayhem, and that, when it couched its enactment in common law language, it intended to carry over such rules as were part of the common law crime into statutory form"]; People v. Pitts , supra , 223 Cal.App.3d at p. 1559, 273 Cal.Rptr. 389 ["research discloses that from the early common law to modern California law, mayhem has been considered a cruel and savage crime"].) By defining "slitting the *303 nose, ear or lip" as an injurious act sufficient to constitute mayhem, "the Legislature itself established [the injuries'] requisite level of seriousness in section 203" ( People v. Santana , supra , 56 Cal.4th at p. 1010, 157 Cal.Rptr.3d 547, 301 P.3d 1157 ), finding those injuries sufficiently egregious to be considered a cruel and savage crime ( Pitts , at p. 1559, 273 Cal.Rptr. 389 ). The Legislature's policy decision in that regard squares with the modern rationale of mayhem to preserve the natural completeness and normal appearance of the human face and body. ( Santana , at p. 1004, 157 Cal.Rptr.3d 547, 301 P.3d 1157.) We "see no basis -- compelled either by case law or by the need to give jurors further guidance -- to superimpose a [great bodily injury requirement] in the [mayhem] instruction." ( Id. at p. 1010, 157 Cal.Rptr.3d 547, 301 P.3d 1157.)
To be clear, we conclude a trial court has no duty to sua sponte instruct the jury that the prosecution must prove great bodily injury as an *891 element of mayhem. Nothing precludes a defendant, however, from requesting a pinpoint instruction clarifying the statutory requirements for mayhem given the specific facts of his or her case. If a defendant believes the injury at issue (e.g., a nick of a knife, slight cut, or infinitesimal slit) does not fall within the meaning of the injurious acts in section 203 or is not of the degree or nature sufficient to support a conviction for mayhem, he or she may request "additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions on such point or points." ( People v. Reed , supra , 38 Cal.2d at p. 430, 240 P.2d 590.)
We also find Turner's permanent injury argument unsupported.[5] Turner argues Goodman stands for the proposition that "the cutting of a lip requiring several stitches, but which would heal without serious scarring, does not constitute mayhem because such an injury would not be considered to be permanent." (Citing Goodman v. Superior Court , supra , 84 Cal.App.3d at p. 621, 148 Cal.Rptr. 799.) Thus, she posits, the instruction was misleading because it stated the disfigurement theory of mayhem required proof of permanent injury, but the slit of the lip theory did not, despite both theories arising from the same alleged act. Goodman does not stand for the proposition advanced.
In Goodman , the Court of Appeal considered "whether, as a matter of law, a five-inch wound inflicted on the victim's face, resulting in no functional impairment, but in probable permanent disfigurement, could support a charge of mayhem." ( Goodman v. Superior Court , supra , 84 Cal.App.3d at p. 623, 148 Cal.Rptr. 799.) In considering this issue, the court observed "not every visible scarring wound can be said to constitute the felony crime of mayhem" ( id. at p. 625, 148 Cal.Rptr. 799 ) and explained "[c]ases decided under the Coventry Act, and statutes like our own which obviously derive from it, have found mayhem for disfigurement alone only where the injury is permanent " ( id. at p. 624, 148 Cal.Rptr. 799, italics added). Goodman " 'grafted' on to section 203 the requirement that a disfiguring injury be permanent" ( People v. Santana , supra , 56 Cal.4th at p. 1007, 157 Cal.Rptr.3d 547, 301 P.3d 1157 ), but that court did not consider nor decide that the three injurious acts to the specific body parts delineated in section 203 require a permanent injury to constitute mayhem.
We have found no California case, nor has Turner identified any, finding section 203 requires slitting the nose, ear or lip to *304 be a permanent injury or to leave a permanent scar (as Turner suggests) for purposes of mayhem. The cases referencing the permanent injury graft on to section 203 have done so in the context of a disfiguring injury only. (See People v. Hill (1994) 23 Cal.App.4th 1566, 1571, 28 Cal.Rptr.2d 783 ["[t]o prove mayhem based on a disfiguring injury, the injury must be permanent"]; People v. Newble (1981) 120 Cal.App.3d 444, 452-453, 174 Cal.Rptr. 637 [in order to *892 constitute mayhem under section 203, a disfiguring injury must be permanent]; People v. Newby (2008) 167 Cal.App.4th 1341, 1347, 84 Cal.Rptr.3d 884 [disfiguring injury must be permanent, as "such requirement was grafted to section 203 by case law"].)
It is true the Goodman court cited a New Mexico Supreme Court opinion and said mayhem would not include the cutting of a lip requiring stitches where the cut would heal without serious scarring. ( Goodman v. Superior Court , supra , 84 Cal.App.3d at p. 624, 148 Cal.Rptr. 799, citing State v. Raulie (1936) 40 N.M. 318, [59 P.2d 359].) When the facts of the New Mexico case are considered in context with this language, however, we read Goodman 's point to be that, while disfigurement may be caused by a cut in the lip, not every cut in the lip rises to the level of a disfigurement. (See Raulie , at p. 319, 59 P.2d 359 [punch in the mouth resulting in a cut lip during a "fist fight and brawl" that required some stitches but left no permanent injury to the lip was not evidence showing "witness ha[d] been maimed or disfigured" for purposes of mayhem]; see also Perkins & Boyce, Criminal Law (3d ed. 1982) Other Offenses Against the Person, ch. 2, § 8, pp. 241-242 & fn. 33 [disfigurement may be caused by a cut in the lip but a cut in the lip does not qualify as disfigurement unless it constitutes a permanent injury].)
We conclude the instruction was not misleading, as Turner contends, by including the case law "graft" in Goodman with respect to the permanent injury requirement for a disfigurement theory of mayhem while including only the statutory language for the slit of the lip theory. Whether a permanent injury requirement should be grafted on to a slit of the lip injury was not presented to the trial court and is not an issue for our consideration on appeal.
B-F**
II***
DISPOSITION
Turner's judgment is modified to reflect a consecutive sentence of 16 months for the robbery conviction. As modified, Turner's judgment is affirmed.
*893 As to Rafferty, the matter is remanded to the trial court to consider exercising its discretion in striking the five-year enhancement. In all other respects, Rafferty's judgment is affirmed.
We concur:
Blease, Acting P. J.
Duarte, J.

All further section references are to the Penal Code unless otherwise specified.

The jury was shown photographs of Mary's injury taken on December 4, 2016.

The prosecution introduced four photographs of Mary's injuries taken on December 19, 2016, approximately two weeks after the attack. One of the photographs shows a vertical scar on Mary's face from her nose to the bottom of her upper lip.

The parties did not propose additional instructions or revisions to the court's proposed instructions and Turner did not object to the instruction as given.

The People do not address this argument.

See footnote *, ante .

See footnote *, ante .