Filed 3/13/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C082890 |
| Plaintiff and Respondent, | (Super. Ct. No. LODCRFDV20160002167) |
| v. | |
| DEREK ANTONIO JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Xapuri Villapudua, Judge. Reversed with directions.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Derek Antonio Johnson, charged with domestic violence causing injury, assault with force likely to inflict great bodily injury, and mayhem[1] engaged in multiple acts of self-mutilation, shouted to voices in his head, could not be quieted during court proceedings, defecated in his pants, was placed in a medical unit at the prison where he was given medication and was put on a suicide watch, and his lawyer expressed doubt throughout the trial about his mental competence to understand the proceedings and to assist in his defense. We conclude defendant's behavior constituted substantial evidence he was not mentally competent to stand trial. The trial court's refusal to hold a competency hearing when faced with substantial evidence defendant was incompetent to stand trial (Pen. Code, § 1368) violates his federal and state right to due process and necessitates reversal of the judgment.

The jury found defendant guilty of domestic violence causing injury, assault with force likely to inflict great bodily injury, and mayhem. The jurors could not agree on the great bodily injury enhancements, and therefore, the court dismissed the enhancements for insufficient evidence. The court also dismissed the prior prison term allegations. Because we must reverse the judgment due to the trial court's failure to hold a competency hearing, we need not address most of the other issues defendant raises on appeal. We conclude, however, there is sufficient evidence to support mayhem for purposes of any future prosecution on the mayhem count.

## FACTS

The facts relevant to the dispositive issues on appeal are set forth in our analysis of the two issues we address. Few other background facts are salient to our discussion. Suffice it to say, defendant and the victim, both of whom struggled with drug addiction, had an acrimonious relationship for about seven months. Pursuant to Evidence Code

---

[1] Defendant was also charged with dissuading a witness by force or threat. The jury found him not guilty. This count has no bearing on this appeal.

section 1109, the prosecution introduced evidence of two uncharged incidents of domestic violence. The first occurred while the victim was withdrawing from heroin in July of 2015. Defendant grabbed her by the throat, held her against the wall, threw her down in the closet, grabbed her hair and dragged her across the room, punched her 50 to 100 times, and bit her. She testified defendant did not let her out of the house for a week. She acknowledged that he was trying to keep her away from friends who were prostitutes and drug addicts.

The second incident of uncharged domestic violence occurred in early 2016. The victim moved out of defendant's grandmother's house and moved home just before Christmas 2015. But afraid defendant would find her at her parents' house, she moved into a women's shelter. She left the shelter to live with him for another couple of weeks and relapsed while she was with him. They used drugs together for a couple of days, but she wanted heroin, her drug of choice. Defendant made her stay in the bathroom for a few hours and threatened her.

The charged incident occurred on February 15, 2016. Defendant and the victim went barhopping together on Valentine's Day. After drinking at various bars, they got into an argument and the victim left. She noticed defendant had left his phone in her car. She went through the phone and discovered defendant had been texting with another woman. Defendant called her from the Hampton Inn. She went to the Hampton Inn after midnight to deliver the phone whereupon they began arguing again. The argument turned violent.

Defendant jumped on the victim and started biting her face and hitting her. He bit her eyelid just underneath her eyebrow. As the victim tried to shove defendant off of her, he repeatedly punched her. He then bit her lips on the left side of her mouth. The victim could feel the blood from the bite on her eyelid ooze down her face. She managed to get out of the car and run to the hotel lobby for help. She was bleeding all down her swollen face. An emergency room doctor glued her eyebrow back together. She had marks on

3

her hands.  She had bruising, including around her lips, scratches on her neck, and a cut to the bridge of her nose.

## DISCUSSION

## I

### *Right to a Competency Hearing*

**Defendant's Evidence of Mental Incompetency**

Defendant's odd behavior began on June 6, 2016, during court proceedings on the eve of trial.  He expressed his frustration with his lawyer to the court and his need to see a doctor for mental problems.  He disclosed he had a learning disability and did not understand what had been involved in a *Marsden*[2] motion.  He told the court he believed he was being treated unfairly.  Defense counsel explained to the court that defendant's behavior was atypical and, consequently, she could not ethically express a doubt as to his competence.

Defendant's negotiations with the prosecutor to settle the case failed the following day.  In the proceedings that followed, he continued shouting "very, very, very loudly." He shouted "ouch, ouch, ouch," over and over again.  The outbursts continued and he eventually banged his head on counsel's table.  He reported hearing voices.  He was very uncooperative as he was removed from the courtroom and returned to the jail for a medical evaluation by the jail psychiatric staff.  He was moved from the general population at the jail to sheltered housing for inmates with special needs.

On June 8, defendant did not appear at trial.  A guard saw him in a cell "head-butting" the ground.  At the same time, defendant was slapping and punching the left side of his face.  Bleeding from his left eyebrow, defendant was put in belly chains.  His left eye socket was swollen and lacerated.  Another guard charged with giving him his

---

[2]  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

4

civilian clothes, saw defendant crouched on the floor with his hand on the right side of his head, yelling, screaming, and hitting the left side of his face. Rocking back and forth, defendant yelled, "Get out of my head. They made me do it." He hit himself at least six times and held his head as he continued to rock back and forth. He was moaning and screaming as the officers entered to restrain him and then he resumed beating himself. There was a jail incident report documenting that he punched himself in the face, hit his head, and began crying. With mounting evidence defendant was decompensating, defense counsel expressed a doubt about his competency to assist her in his defense. She noted that mental illness can be fluid and he had a history of receiving psychiatric treatment in prison. She lamented the lack of paperwork to document any mental health treatment he had received.

On June 9, defendant appeared at trial with his eye swollen shut. He was wringing his hands non-stop, grabbing and twisting his shirt, and mumbling while looking down and shaking his head. Defense counsel reported that defendant appeared frightened of her, could not assist her, was incapable of testifying, and appeared to have had a complete breakdown. He was reported to have defecated in his pants. A guard stated defendant began mumbling and exhibiting bizarre behavior once he reached the threshold of the courtroom. He never returned to court for his trial.

On June 10, a guard testified defendant was screaming and belligerent while being transported to the court. He refused belly chains and shackles as he was escorted from medical housing. At the jail, he refused to shower and eat. His screaming was so disruptive, the guard took him back to the jail and he was placed on a suicide watch. Again, defense counsel renewed her motion for a competency hearing.

Defendant refused to return to court on June 14, June 15, June 16, June 17, June 21, and June 22. He continued to hear voices and refuse to dress or come out from under the bed. The trial was completed in his absence.

5

**The Trial Court's Assessment of Defendant's Competency**

The trial court expressed no doubt about defendant's competency. The court refused defense counsel's multiple requests for a competency hearing based on the belief that defendant's behavior was merely a manipulative ploy to delay the proceedings. The trial judge reached this conclusion on the very first day defendant's behavior began to deteriorate and its view remained constant, in spite of defendant's worsening behavior and defense counsel's increasing alarm.

The trial court warned defendant, when he first expressed his confusion, explained he had a learning disability, and needed to see a medical doctor, that it would not delay the proceedings. It reissued the warning time and time again. It made an extensive record to substantiate defendant's periods of lucidity and calm behavior. It called the guards to testify to their personal observations of defendant's behavior. It reviewed the transcript of the preliminary hearing and an earlier *Marsden* motion in another court, and stated for the record that defendant had not evidenced signs of incompetency in these earlier settings. It was not until he was faced with going to trial that the trial court observed his disruptive behavior. It restated its belief that he was attempting to manipulate the system and delay his trial. It told defense counsel repeatedly it was not going to grant defendant a competency hearing. The trial court did not refer him for a psychological assessment. No psychiatrist or mental health professional testified to defendant's competency to stand trial.

**A Matter of the Fundamental Right to Due Process**

Consistent with our most primal instinct for due process, a person cannot stand trial who is not mentally competent to understand the nature of the criminal proceedings or to assist in his or her defense in a rational manner. (*People v. Jones* (1991) 53 Cal.3d 1115, 1152 (*Jones*).) "Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent. ([Pen. Code, ]§ 1367; *Drope*

6

*v. Missouri* (1975) 420 U.S. 162, 181; *Pate v. Robinson* (1966) 383 U.S. 375, 384-386; *People v. Ramos* (2004) 34 Cal.4th 494, 507.)" (*People v. Rogers* (2006) 39 Cal.4th 826, 846 (*Rogers*).)  Even if an accused appears competent at the beginning of the criminal proceedings, the trial court must remain vigilant and alert to any circumstances that indicate a defendant's mental health has changed and that he or she may be unable to continue to meet the standards of competence to stand trial.  (*People v. Lightsey* (2012) 54 Cal.4th 668, 690.)  "Indeed, the United States Supreme Court has held that the failure of a trial court to employ procedures to protect against trial of an incompetent defendant deprives the defendant of his due process right to a fair trial and requires reversal of his conviction."  (*People v. Hale* (1988) 44 Cal.3d 531, 539.)

The sanctity of this basic principle is not challenged here.  But the role of the trial court, and the discretion it is accorded, in assessing a criminal defendant's ongoing competency to stand trial is hotly contested, and in our view, misunderstood by the trial court and the Attorney General.  It is true that prior to *People v. Pennington* (1967) 66 Cal.2d 508 (*Pennington*), a trial court was permitted to resolve conflicting evidence concerning a defendant's competence to stand trial in determining whether to conduct a competency hearing.  (*People v. Hale, supra*, 44 Cal.3d at p. 539.)  But the Supreme Court in *Pennington*, following the United States Supreme Court's directive in *Pate v. Robinson, supra*, 383 U.S. 375 [15 L.Ed.2d 815], reinterpreted Penal Code section 1368 and held:  "*Pate v. Robinson* stands for the proposition that an accused has a constitutional right to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense.  Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence -- testimony of prosecution witnesses or the court's own observations of the accused -- may be to the contrary.  [¶]  . . . [W]hen defendant has come forward with substantial evidence of present mental incompetence, he is entitled to a [Penal Code]

section 1368 hearing as a matter of right under *Pate v. Robinson, supra*, 383 U.S. 375. *The judge then has no discretion to exercise.*" (*Pennington, supra*, 66 Cal.2d at p. 518, emphasis added.)

There has been no retreat from the *Pennington* rule. "The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction." (*Rogers, supra*, 39 Cal.4th at p. 847.) "[O]nce the accused has come forward with *substantial evidence* of incompetence to stand trial, due process *requires* that a full competence hearing be held as a matter of right. [Citation.] In that event, the trial judge has no discretion to exercise." (*People v. Welch* (1999) 20 Cal.4th 701, 738 (*Welch*).) "When the accused presents substantial evidence of incompetence, due process requires that the trial court conduct a full competency hearing." (*Jones, supra*, 53 Cal.3d at p. 1152.) Failure to hold a competency hearing when there is substantial evidence the defendant is not competent requires reversal. (*People v. Murdoch* (2011) 194 Cal.App.4th 230, 239.)

The trial court's duty to conduct a full competency hearing is not relieved even when the prosecution's evidence is also substantial, is in conflict with the evidence of incompetency, and may seem more persuasive. (*People v. Stankewitz* (1982) 32 Cal.3d 80, 93; *Pennington, supra*, 66 Cal.2d at p. 519.) Nor do the judge's personal observations obviate the necessity for a competency hearing. (*Jones, supra*, 53 Cal.3d at pp. 1152-1153.) " ' "The function of the trial court in applying *Pate*[ *v. Robinson*]*'s* substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? It [*sic*] sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. *At any time that such evidence appears, the trial court sua sponte must order an evidentiary hearing on the competency issue.* It is only after the evidentiary hearing, applying the usual rules appropriate to trial, that the court decides the issue of

8

competency of the defendant to stand trial." [Citation.]' " (*People v. Tomas* (1977) 74 Cal.App.3d 75, 89 (*Tomas*).)

The sole question is whether defendant presented substantial evidence he was not mentally competent to stand trial. Substantial evidence is a quantum of evidence that raises a reasonable doubt concerning the defendant's competence to stand trial. (*People v. Young* (2005) 34 Cal.4th 1149, 1217 (*Young*).) The doubt which triggers the obligation to order a hearing is not a subjective one, but rather a doubt determined objectively from the record. (*Tomas, supra*, 74 Cal.App.3d at p. 90.) Thus, we must determine whether a reasonable jurist, with the benefit of the available information, would have developed a doubt about defendant's mental competence. (*Odle v. Woodford* (9th Cir. 2001) 238 F.3d 1084, 1089 (*Odle*).)

Competence to stand trial requires "the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." (*Odle, supra*, 238 F.3d at p. 1089.) A defendant's demeanor and irrational behavior may constitute substantial evidence of incompetence (*People v. Mai* (2013) 57 Cal.4th 986, 1032-1033); but calm behavior in the courtroom is not necessarily inconsistent with mental incompetence. (*Odle*, at p. 1089.) Defense counsel's assessment is entitled to some weight. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 465.) Suicide attempts or suicide ideation may raise a bona fide doubt regarding a defendant's competence to stand trial. (*Rogers, supra*, 39 Cal.4th at p. 848.)

**Analysis**

Defendant argues that although the trial court refused to hold a competency hearing, it called witnesses and made a record to substantiate its preordained determination that defendant was competent to stand trial. According to defendant, the judge had made a finding of competency during a *Marsden* hearing before trial and before most of the substantial evidence of incompetence had emerged. The court never wavered from its initial assessment, despite mounting evidence of self-mutilation,

9

inappropriate outbursts, reports defendant was hearing voices, had defecated in his pants, and was put on suicide watch, and pleas by defense counsel to conduct a full competency hearing because defendant was no longer able to assist in his defense. Defendant insists we must reverse the judgment because there was substantial evidence of his incompetency.

The Attorney General contends the evidence does not meet the requisite threshold. Implicit in the Attorney General's argument and the trial court's citation to *People v. Medina* (1995) 11 Cal.4th 694, is the nagging notion that we should defer to the trial court's assessment of competency because it observed his behavior, familiarized itself with his conduct in the past, and made a record of the many times he behaved calmly and appropriately. In short, the Attorney General insists there was no abuse of discretion. But, as the legion of cases cited above demonstrate, a trial court has no discretion to exercise once a defendant presents substantial evidence of incompetency. We examine the evidence to determine whether the evidence is sufficient to create a reasonable doubt he was competent to stand trial.

The most glaring deficit in this case is the utter lack of any psychological evaluation of defendant available to the court. Unlike most of the reported cases cited by the parties, no psychiatrist, psychologist, or any other mental health expert testified whether defendant was capable of understanding the nature of the proceedings or was equipped to help his lawyer with his defense. The trial court's decision that defendant was competent was based exclusively on its own observation of defendant's behavior, the observations of the guards, and the absence of any record of any prior findings of incompetency or notations of disruptive behavior.

In the absence of an expert opinion that defendant was feigning his mental health issues (see, e.g, *People v. Kroeger* (1964) 61 Cal.2d 236, 243-244), we conclude the record contains substantial evidence he may not have been competent to stand trial. As mentioned above, the fact that defendant had appeared lucid and calm during earlier court

10

appearances does not necessarily mean he remained competent. The trial court has a responsibility to monitor any changes in a criminal defendant's capacity to stand trial. As defense counsel aptly noted, mental health can be fluid; defendant's competency could very well change over time. Without any guidance from a mental health professional, the court could easily attribute motives to defendant a mental illness might prevent him from entertaining. A full competency hearing would have provided defense counsel the opportunity to explore the nuances of defendant's competency and whether his bizarre behavior and outbursts were a result of a developmental disability or mental disorder (Pen. Code, § 1367) or, as the trial court believed, a mere ploy to manipulate and delay the proceedings. But "[w]hen defense counsel has presented substantial evidence that a defendant is incompetent to stand trial, the trial court must declare a doubt as to the defendant's competence and suspend proceedings even if the court's own observations lead it to believe the defendant is competent." (*Jones, supra*, 53 Cal.3d at p. 1153.)

It is true that disruptive behavior alone may not trigger the necessity for a competency hearing. (*People v. Burney* (1981) 115 Cal.App.3d 497, 503.) But here his behavior was not only disruptive, but out of control, self-destructive, and extremely odd. The judge described him as yelling "very, very, very loudly" and he would not calm down; he continued to wail, "ouch, ouch, ouch"; he was crying and mumbling; he reported hearing voices on multiple occasions; he lost control of his bowels; he beat his head into the floor; he injured his eye; he slapped himself repeatedly. Even the trial court commented that it had never seen comparable behavior in the nine years it had presided over trials. Jail personnel were concerned enough about defendant's behavior to remove him from the general population, place him in a medical unit, order a psychological assessment, and put him on suicide watch.

It certainly could be the case, as the trial court found, that defendant was a master manipulator and that his antics were designed to delay his trial. But the question is not whether the evidence is sufficient to support the trial court's finding or whether the trial

court abused its discretion. The case authority, as reported above, is clear. The question is whether there is substantial evidence to cast a reasonable doubt defendant was mentally competent. Because there was more than substantial evidence defendant was incompetent, the trial court was compelled by fundamental principles of due process to conduct a competency hearing. It may have reached the same conclusion following a full hearing; but in the absence of a hearing, we are compelled to reverse the judgment.

The Attorney General points us to cases in which there was not substantial evidence the defendant was incompetent. The facts in these cases are easily distinguished and the evidence of incompetence far less compelling. In *Welch, supra*, 20 Cal.4th 701, the defendant demonstrated a remarkable knowledge of case authority, courtroom procedure, and other aspects of legal representation. His only limitation appeared to be a " 'paranoid distrust of the judicial system.' " (*Id.* at p. 739) Although that distrust precluded him from effectively representing himself, it did not amount to substantial evidence of incompetence to stand trial. (*Id.* at pp. 739-742.)

In *Young, supra*, 34 Cal.4th 1149, a licensed psychologist administered a series of neuropsychological tests and found the defendant was well oriented, not psychotic, and not suffering from a thought disorder. (*Id.* at p. 1215.) Although he reported the defendant's verbal intelligent quotient to be in the borderline range and rated his level of acquired knowledge as exceptionally poor (*Ibid.*), he did not relate any of his findings in terms of the defendant's competency to stand trial. (*Id*. at p. 1217.) To the contrary, he made no diagnosis of a developmental disability and testified defendant did not have a thought disorder. (*Id*. at p. 1218.) And there was no testimony by family members or former teachers to suggest he was incompetent to stand trial. (*Ibid*.) Here there is absolutely no expert evaluation of defendant's mental capacity whether related to his ability to function or his competency to stand trial. Yet there is an abundance of evidence, not presented in *Young*, of his outrageous behavior in court, his self-destructiveness, and other signs of mental illness including mumbling and hearing voices.

In *Rogers, supra*, 39 Cal.4th 826, the court found the defendant's suicide tendencies alone "did not constitute substantial evidence of incompetence, for they were not accompanied by bizarre behavior, the testimony of a mental health professional regarding competence, or any other indications of an inability to understand the proceedings or to assist counsel." (*Id*. at p. 848.) No medical expert testified that his mental health problems rendered him incompetent to stand trial. (*Id*. at pp. 848-849.) Whereas the defendant in *Rogers* did not exhibit any bizarre behavior, we have catalogued defendant's litany of outbursts and odd behavior. Thus, the evidence defendant was incompetent to stand trial was far more than the suicide ideation recounted in *Rogers*.

And in *People v. Howard* (1992) 1 Cal.4th 1132, the defendant pointed to two incidents he believed constituted substantial evidence of incompetence—an inflammation in the eyes and his agitation about jail conditions. (*Id*. at p. 1162.) "The circumstances underlying defendant's motion for a continuance indicated that he needed medical attention, and those underlying his motion for a mistrial indicated that the conditions of his confinement were unsatisfactory. However, nothing about either incident remotely suggested that he was mentally incompetent. Thus, the court was not required to order a hearing." (*Id*. at p. 1163.) Whereas the evidence in *Howard* involved only a physical ailment expected to heal and a dissatisfaction with his prison conditions he clearly, even if angrily, articulated, here the evidence presented to the trial court suggested a much more amorphous and debilitating mental condition which became an obstacle to defendant's ability to assist in his defense.

None of these cases are factually apposite, although all of the cases recite the same legal principles. Due process will not countenance the trial of a person who either cannot understand the nature of the proceedings or who cannot assist in his or her own defense. When the evidence of any quirks, physical anomalies, frustrations, anxieties, or borderline intellectual functioning does not interfere with the defendant's understanding

13

of the proceedings or hamper his or her ability to help fashion his or her defense, there is no assault on our notion of fundamental fairness because there is not sufficient evidence to suggest the defendant is mentally incompetent. Where, as here, however, substantial evidence does suggest the defendant *might* be incompetent, due process dictates a full exploration of the defendant's mental health to determine if, in fact, he or she is competent to stand trial. Since the trial court refused defense counsel's multiple requests for a competency hearing and there is substantial evidence in this record that defendant was incompetent, the judgment must be reversed.

## II

### *Sufficient Evidence of Mayhem*

Because the judgment must be reversed, we need address only one of the remaining issues raised by defendant. If there is insufficient evidence to support a conviction, double jeopardy precludes retrial. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 72.) Thus, we will consider defendant's contention that there is insufficient evidence of mayhem because there was no evidence the victim suffered a slit lip or was permanently disfigured.

Penal Code section 203 defines simple mayhem as follows: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." Under California case law, mayhem has been expanded to include acts not within the original definition of the crime, which, in English common law, required a dismemberment or disabling that caused a substantial diminishment in the victim's ability to fight for the sovereign. (*People v. Santana* (2013) 56 Cal.4th 999, 1003-1004 (*Santana*).)

"Though [Penal Code] section 203 contains 'verbal vestiges' of the common law and the Coventry Act of 1670, ' "the modern rationale of the crime may be said to be the preservation of the natural completeness and normal appearance of the human face and

14

body, and not, as originally, the preservation of the sovereign's right to the effective military assistance of his subjects." ' [Citations.] In other words, [Penal Code] section 203 'protects the integrity of the victim's person.' " (*Santana, supra*, 56 Cal.4th at p. 1004.)

The law of mayhem has evolved to such a degree that a number of cases have affirmed mayhem convictions based on relatively minor injuries. (*People v. Keenan* (1991) 227 Cal.App.3d 26, 35-36; *People v. Caldwell* (1984) 153 Cal.App.3d 947, 952; *People v. Newble* (1981) 120 Cal.App.3d 444, 448.) Defendant insists, however, that the injuries sustained by the victim are just too minor to constitute mayhem even under the more elastic definition employed in many more modern cases.

Penal Code Section 203 pays particular attention to the face, recognizing the particular pain and emotional scarring that results from disfiguring a person's face. Here defendant savagely bit the victim's face, including her lip and eyelid. She testified he bit her in a semicircle on the top of her lip on the left side clear through her bottom left lip. She explained the bite marks left two scars and, at the time of trial, she could not feel that part of her lip. The bite to her right eyelid resulted in another scar on her face. Her severed eyebrow had to be glued back together and her eye remained swollen shut for a week. Her right eyebrow is permanently shorter than her left eyebrow.

Defendant argues that the victim testified defendant punctured her lip; she did not testify he slit it. He insists that a punctured lip does not meet the statutory definition of mayhem. We disagree. The permanent scars on her lip are precisely the type of disfiguring injury the mayhem statute targets. While it is true that the injuries must be more than slight and temporary (*People v. Thomas* (1979) 96 Cal.App.3d 507, overruled on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480, 498), we do not believe that the method used to inflict the disfigurement to the face should be as narrowly construed as defendant suggests. Here defendant viciously bit the victim's face, including both her lip and eye. Whether the defendant technically slit, bit, or punctured the victim's lip, he

15

caused a disfiguring injury on a sensitive and prominent feature on her face. Indeed, the language of the statute singles out the lip, along with other parts of the face, as worthy of special protection. In the context of the evolving nature of the mayhem statutes and the modern focus on the " ' "natural completeness and the normal appearance of the human face" ' " (*Santana, supra*, 56 Cal.4th at p. 1004), we construe slitting to include such other mechanisms as puncturing and biting as long as the injury inflicted is not slight or temporary.

Moreover, defendant also minimizes the scarring. The Legislature did not provide defendant a free pass for small scars. Rather, the statute provides, and the jury was instructed, that mayhem consists of permanent scarring. The victim's testimony constitutes substantial evidence that she continues to have scars on her face where defendant bit her. That testimony was also enough to support the conviction for mayhem.

## DISPOSITION

The judgment is reversed. Defendant can be retried for mayhem if the trial court finds he is mentally competent to stand trial following a full competency hearing and the prosecution refiles the charges against him.

                                          RAYE       , P. J.

We concur:

      BLEASE    , J.

      BUTZ     , J.

16