Filed 12/23/19 Certified for Publication 1/16/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B293965 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA459012) |
| v. | |
| MIGUEL ROMERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie A. Swain, Judge. Affirmed with directions.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed May 21, 2018, the Los Angeles County District Attorney's Office charged defendant and appellant Miguel Romero with attempted murder (Pen. Code, §§ 664/187, subd. (a); count 1),[1] aggravated mayhem (§ 205; count 2), and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 3). It was also alleged that defendant committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1); the gang enhancement) and that he personally inflicted great bodily injury (§ 12022.7, subd. (a); the GBI enhancement).[2] It was further alleged that defendant previously committed a prior strike (§§ 667, subd. (d), 1170.12, subd. (b).) The alleged prior was a 2009 juvenile adjudication for robbery.

A jury convicted defendant of counts 2 and 3, also finding the gang enhancement true as to each count and the GBI enhancement true as to count 3.[3] The jury acquitted defendant of count 1.[4] The trial court later reduced the aggravated mayhem

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Codefendants Sammy Chavez (Chavez), Heriberto Gonzalez (Gonzalez), and Felipe Torres (Torres) were also charged with the same offenses and allegations, with Torres additionally accused in all three counts with personal use of a deadly or dangerous weapon enhancement (§ 12022, subd. (b)(1)).

[3]     The appellate record indicates that the jury did not make a finding on the GBI enhancement in count 2.

[4]     Torres and defendant were tried together and received the same verdict.

conviction in count 2 to mayhem (§ 203). In a bifurcated proceeding, the trial court found the prior strike allegation to be true.

Defendant was sentenced to state prison for a term of 18 years, as follows: the midterm of four years on the mayhem conviction, doubled as a result of the prior strike. The trial court also imposed a consecutive 10-year sentence for the gang enhancement. While the trial court sentenced defendant to a three-year term, plus 10 years for the gang enhancement, on count 3, it did not impose punishment for the GBI enhancement. The sentence on count 3 was stayed pursuant to section 654.

Defendant timely filed a notice of appeal. He contends that (1) his conviction for mayhem must be reversed because it is not supported by sufficient evidence; (2) the abstract of judgment must be corrected to reflect his conviction of mayhem, not aggravated mayhem; and (3) the trial court's use of defendant's prior juvenile adjudication to increase his sentence beyond the statutory minimum violated his constitutional rights. The People ask that we remand the matter for resentencing on count 3 because the trial court did not impose punishment on the GBI enhancement found true by the jury.

We agree with defendant that the abstract of judgment must be corrected to accurately reflect his conviction of simple mayhem. We also agree with the People that the matter must be remanded for resentencing on the GBI enhancement as to count 3. In all other respects, we affirm.

### BACKGROUND

*The People's Evidence*

A. <u>The victim is stabbed by defendant</u>

Ryan Ramirez (Ramirez) and his girlfriend, Jenny Burela (Burela), were walking towards the entrance of a Food 4 Less grocery store in Boyle Heights on July 2, 2017. At the same time,

3

surveillance footage depicted defendant, Torres, Chavez, Gonzalez, and an unidentified fifth man leaving the store. When the group crossed paths with Ramirez and Burela in the parking lot, they attacked Ramirez. Ramirez was stabbed eight times.

Burela drove Ramirez to the hospital, but was soon pulled over by police for speeding. Los Angeles Police Department Officer Daniel Guevara saw Ramirez bleeding in the passenger seat and called an ambulance. Both Ramirez and Burela reported to the officer that Ramirez had been stabbed. Burela said that the attackers yelled "'White Fence'" several times as they left.

The Food 4 Less was in disputed gang territory. Officer Guevara believed that defendant was a member of the White Fence criminal street gang, along with Torres, Chavez, and Gonzalez. Ramirez was an active member of the Boyle Heights 13 criminal street gang.[5] Officer Guevara opined that a hypothetical scenario consisting of the facts of the attack on Ramirez constituted a crime committed for the benefit of the White Fence criminal street gang.

Ramirez testified that he was attacked by "black guys." He said that he had three or four stab wounds that looked like "scrape marks." He stated that the wounds at the time of trial 10 months later had healed to the point that "everything is good, back to normal like nothing had happened," and that no scars resulted from being stabbed. He refused to remove his shirt while testifying to show that he did not have any scarring. He acknowledged that he told the prosecutor in a pretrial interview that he was worried people would kill him if he testified and that he had to ask permission from an "older homie" to allow the prosecutor to take photographs of any injuries underneath his

---

[5]     Ramirez denied being a member of the Boyle Heights 13.

shirt. He confirmed that his desire to seek permission represented the type of respect a younger gang member has for the older members of the gang, and how a gang member is not supposed to cooperate with law enforcement unless he receives permission from a high-ranking member.

Officer Guevara testified that a common rule between gang members is not to testify against other gang members in court. Should a gang member do so, he would be subject to retaliation, including murder attempts, even from members of his own gang.

B. <u>Ramirez's injuries</u>

Ramirez arrived at the hospital about 15 minutes after he was stabbed. He had been stabbed eight times. His blood pressure was falling, and he received an immediate blood transfusion. The wounds included a one centimeter laceration on his right chest; two lacerations to his abdomen, one of which was three centimeters; one 2-centimeter laceration on his right knee; one 2-centimeter laceration to his left armpit; one laceration on his right hip; and two 2-centimeter lacerations to the left side of his glute. The stab wounds were closed with either surgical staples or sutures.

An emergency CT scan revealed that Ramirez had some air around his right lung. That condition, which prevents the lung from inflating, is called pneumothorax, colloquially known as a collapsed lung. The pocket of air was not large enough to require immediate intervention, however, an X-ray taken about 12 hours later showed "much more air around the right lung" and that the right lung was "only partially inflated." As Ramirez's collapsed lung had gotten worse, it required an emergency procedure. Left untreated, the condition is life-threatening, both because the afflicted lung cannot fully expand and also because it can start to push on the other lung and then the heart. In either scenario, it is "possible" that the patient could die.

In order to fix Ramirez's collapsed lung, doctors placed an open tube with suction attached inside his chest, between the lung and the layer surrounding the outside of the lung. Air left through the tube and kept Ramirez's lung inflated. The tube remained in Ramirez's chest for three days.

Ramirez also had a hematoma, a swelling of pooled blood, near his rectum. In addition, he suffered a fracture in the bottom of his breast bone in his chest.

### Defense Evidence

The defense rested without presenting any evidence.

## DISCUSSION

### I. *Sufficient evidence supports defendant's conviction for mayhem*

Defendant contends that his conviction for mayhem should be reversed because there was insufficient evidence that Ramirez suffered permanent disfigurement or a disability that was more than slight or temporary.

### A. <u>Relevant law</u>

The prosecution has the burden of proving element of the charged count. (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.) "To determine whether the prosecution has introduced sufficient evidence to meet this burden, courts apply the 'substantial evidence' test. Under this standard, the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence*—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*Id*. at pp. 260–261.) The uncorroborated testimony of a single witness is sufficient to sustain a conviction unless the testimony is physically impossible or inherently improbable. (*People v. Panah* (2005) 35 Cal.4th 395, 489.) "Reversal . . . is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial

6

evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." (§ 203; *People v. Santana* (2013) 56 Cal.4th 999, 1003 (*Santana*).) The modern rationale behind the offense of mayhem in California is ""the preservation of the natural completeness and normal appearance of the human face and body."" (*Id.* at p. 1004.) A member of the body is a general term describing any integral part or vital organ of the body. (*People v. Robinson* (2014) 232 Cal.App.4th 69, 76.)

Disfigurement of the body "'impairs or injures the beauty, symmetry or appearance of a person or thing . . . [or] renders unsightly, misshapen or imperfect or deforms in some manner.'" (*People v. Page* (1980) 104 Cal.App.3d 569, 577.) To prove mayhem based on a disfiguring injury, the injury must be permanent. (*Santana*, *supra*, 56 Cal.4th at p. 1007; see also *People v. Newble* (1981) 120 Cal.App.3d 444, 447 [if an injury is likely to leave a permanent scar, it constitutes disfigurement].) Permanent scarring constitutes a disfiguring injury. (*People v. Page*, *supra*, at p. 578.) An injury within the meaning of mayhem is still considered permanent if modern technology effectively repairs the injury. (*People v. Hill* (1994) 23 Cal.App.4th 1566, 1574.) Accordingly, "the possibility of medical alleviation [does] not . . . diminish one's culpability for infliction of an injury that would otherwise constitute mayhem." (*Id.* at p. 1572.)

B. <u>Analysis</u>

Applying these legal principles, we conclude that Ramirez's scarring from the stabbing attack constitutes sufficient evidence to support defendant's conviction of mayhem.

Ramirez was stabbed eight times, resulting in one and three centimeter lacerations over his body. The lacerations were closed either by surgical staples or sutures. While there was no direct evidence that Ramirez had scars on his body, the trial court could infer from the evidence presented that Ramirez's wounds resulted in scars. And scars satisfy the disfigurement in mayhem. (*People v. Johnson* (2018) 21 Cal.App.5th 267, 281.)

Notably, Ramirez was purposefully evasive about his scars. He testified that he did not have any scars, and he refused to raise his shirt to prove that he was not injured. From the testimony presented about gang culture, it was reasonable for the trial court to infer that Ramirez wanted to avoid the consequences of testifying, not that he did not suffer any scars from the stabbing. (*People v. Wright* (2016) 4 Cal.App.5th 537, 546; *People v. Brown* (2014) 59 Cal.4th 86, 106 [resolution of conflicts and inconsistencies in testimony is in the exclusive province of the trier of fact].)

II. *The abstract of judgment must be corrected to reflect a conviction for mayhem*

Defendant contends that the abstract of judgment must be corrected because it incorrectly identifies his conviction in count 2 as "aggravated mayhem" as opposed to simply "mayhem." The People agree.

We agree with the parties. The trial court reduced defendant's conviction from aggravated mayhem (§ 205) to mayhem (§ 203) in count 2, and the abstract of judgment must be corrected to accurately reflect defendant's conviction. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [court may correct clerical errors in the abstract of judgment at any time].)

8

III. *The trial court did not infringe on defendant's constitutional rights by finding that his prior juvenile adjudication constituted a strike*

Defendant contends that his Sixth and Fourteenth Amendment rights were violated when the trial court used his prior juvenile robbery adjudication as a strike to increase his current sentence, asserting that a juvenile adjudication can never be used to increase a sentence because a juvenile does not have the right to a jury.

Defendant's argument is premised on "[a] series of United States Supreme Court decisions, beginning with *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), establish[ing] an adult criminal defendant's general right, under the Fifth, Sixth, and Fourteenth Amendments, to a *jury* finding beyond a reasonable doubt of any fact used to increase the sentence for a felony conviction beyond the maximum term permitted by conviction of the charged offense alone." (*People v. Nguye*n (2009) 46 Cal.4th 1007, 1010 (*Nguyen*).) *Apprendi* held that *"[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra,* at p. 490, italics added.)

As defendant acknowledges, in *Nguyen*, our Supreme Court considered and rejected the contention that *Apprendi* and its progeny bar a court from using a California juvenile adjudication as a prior strike to enhance a defendant's sentence under the "Three Strikes" law. (*Nguyen, supra*, 46 Cal.4th at p. 1028 ["the absence of a constitutional or statutory right to jury trial under the juvenile law does not, under *Apprendi*, preclude the use of a prior juvenile adjudication of criminal misconduct to enhance the maximum sentence for a subsequent adult felony offense by the same person"].) However, relying on recent opinions in *Descamps*

9

*v. United States* (2013) 570 U.S. 254 (*Descamps*), *Mathis v. United States* (2016) 579 U.S. ___ [136 S.Ct. 2243, 195 L.Ed.2d 604] (*Mathis*), and *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), defendant contends *Nguyen* is no longer controlling precedent because those cases recognized an expanded or broader right to a jury trial on facts that can increase a defendant's sentence.

We reject defendant's argument. As an initial matter, we note that in 2016, after *Descamps* and *Mathis* were decided, our Supreme Court expressly declined to reconsider its holding in *Nguyen* that "juvenile adjudications [are] inadmissible as prior convictions under *Apprendi* . . . and its *progeny*." (*People v. Landry* (2016) 2 Cal.5th 52, 117, fn. 18.) In addition, *Descamps* and *Mathis* do nothing to undermine the premise of our Supreme Court's holding in *Nguyen* because they did not concern the possibility of using the fact that a defendant incurred a juvenile adjudication to enhance a defendant's sentence for a subsequent crime. Instead, those cases strictly prohibited factfinding by the sentencing court beyond the fact of a prior conviction. Specifically, *Descamps* and *Mathis* interpreted the federal Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)) and applied *Apprendi*'s Sixth Amendment limits on judicial factfinding to determine the extent to which a sentencing court could make findings to determine if a prior conviction qualified as a predicate offense to enhance a subsequent sentence under the ACCA. (*Descamps*, *supra*, 570 U.S. at p. 257; *Mathis*, *supra*, 136 S.Ct. at p. 2248.) In both cases, the Supreme Court concluded that the sentencing courts were generally barred from looking beyond the statutory elements of the prior offenses to determine whether the defendant's conduct qualified for imposition of a sentence enhancement under the ACCA. (See *Descamps*, at pp. 259, 268–269 [sentencing court impermissibly relied on record of a plea

10

colloquy in finding that the defendant's prior conviction for burglary involved unlawful entry]; *Mathis*, at p. 2250 [sentencing court impermissibly relied on records of a prior conviction to determine that the defendant had burglarized structures, rather than vehicles].)  In *Gallardo*, our Supreme Court reevaluated its prior precedent in *People v. McGee* (2006) 38 Cal.4th 682, in light of *Descamps* and *Mathis*, holding that it was no longer permissible for "trial courts to make findings about the conduct that 'realistically' gave rise to a defendant's prior conviction.  The trial court's role is limited to determining the facts that were necessarily found in the course of entering the [prior] conviction." (*Gallardo*, *supra*, 4 Cal.5th at p. 134.)  However, *Gallardo* did not concern whether it is permissible to use a juvenile adjudication as a prior strike.

Thus, although *Gallardo*, *Mathis*, and *Descamps* all disapprove judicial factfinding by a sentencing court to determine whether the defendant suffered a qualifying prior conviction when that issue is unclear from the fact of the conviction itself, none of those cases calls into question *Nguyen*'s holding that a sentencing court may impose a sentence enhancement based on a prior juvenile adjudication, despite the lack of right to a jury trial in that proceeding.  As *Nguyen* remains good law, we are bound to follow it and to reject defendant's argument that the use of his prior juvenile adjudication as a prior strike violated his constitutional rights. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

IV.  *Remand is necessary for the trial court to impose a sentence on the count 3 GBI enhancement*

The jury found a GBI enhancement as to count 3 true, but the sentence imposed did not include any term for that enhancement.  Instead, the trial court sentenced defendant to a three-year term on the underlying offense and an additional 10-

11

year term on the gang enhancement; the trial court then stayed the count 3 sentence pursuant to section 654.  The People assert that remand is required for the trial court to impose a sentence on the GBI enhancement, even though the sentence is stayed.  Defendant does not respond to this argument in his reply brief.

We agree with the People.  Remand is necessary because a trial court is required to impose punishment on every count and allegation, even when it stays the sentence under section 654.  (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.)  The GBI enhancement carries a mandatory three-year sentence (§ 12022.7, subd. (a)), but a trial court also has the discretion to strike the enhancement pursuant to section 1385 (*People v. Meloney* (2003) 30 Cal.4th 1145, 1155).

Upon remand, the trial court must impose a sentence on or strike the GBI enhancement.

## DISPOSITION

The trial court is instructed to correct the abstract of judgment to reflect a conviction for mayhem (as opposed to aggravated mayhem) in count 2.  The trial court is also directed to impose a sentence on or strike the GBI enhancement.  In all other respects, the judgment is affirmed.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.       _____, J.
LUI                                CHAVEZ


12

Filed 1/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B293965 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA459012) |
| v. | **ORDER CERTIFYING** |
| MIGUEL ROMERO, | **OPINION FOR PUBLICATION** |
| Defendant and Appellant. | |

THE COURT:*

    The opinion in the above-entitled matter filed on December 23, 2019, was not certified for publication in the Official Reports.

    For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

*LUI, P. J.        ASHMANN-GERST, J.        CHAVEZ, J.