Filed 8/20/24  P. v. Cornejo CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B329213 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA506931) |
| v. | |
| NELSON CORNEJO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Nelson Cornejo and Crystal R. were in a dating relationship and had a child together. One night in July 2022, Cornejo slashed Crystal's face with a sharp object, giving her a large cut on her cheek. A jury convicted Cornejo of mayhem (Pen. Code,[1] § 203; count 1), assault with a deadly weapon (§ 245, subd. (a)(1); count 2), and battery causing serious bodily injury (§ 243, subd. (d); count 3). On appeal, Cornejo contends there is insufficient evidence to support his mayhem conviction. He also contends the trial court erred in denying his motion for a judgment of acquittal on the mayhem charge under section 1118.1. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Relevant Prosecution Evidence

On July 2, 2022, Crystal was living at the L.A. Grand Hotel. Video surveillance footage showed that around 1:30 a.m., Crystal was sitting on a chair in front of the hotel smoking a cigarette. Minutes later, a person wearing a grey hooded top and dark colored pants approached Crystal. Crystal looked directly at and extended her left arm towards the person. At that moment, the person cut Crystal's face with an unknown object and then ran away. Crystal went inside the hotel and told the security desk what happened.

Immediately after, John Gillett, a program manager at the hotel, received a radio call about the incident. He then spoke to Crystal and called 911. During the 911 call, Gillett was standing next to Crystal and both of their voices can be heard on the call.

---

[1] All undesignated statutory references are to the Penal Code.

2

Gillett told the 911 operator that Crystal's "baby's dad" was the person who attacked her. Crystal identified Cornejo as her attacker and said that he had done something like that to her before.

Shortly after, Los Angeles Police Officer Bradley Goetting arrived at the hotel and met with Crystal. Crystal "had a severe laceration to the left side of her face." She told Goetting that Cornejo, "the father of her child," cut her face. That night, officers searched for Cornejo and the weapon used to cut Crystal, but they found neither.

Paramedics treated Crystal's face at the hotel and then transported her to the hospital. At the hospital, Crystal met with a surgeon and received "reconstructive surgery" on her face, including stitches.

Days later, several Los Angeles Police Department officers went to the hotel after receiving a radio call that the suspect of the July 2, 2022 attack had returned. Officer Gilbert Rodiles spoke to Crystal about the attack. Crystal said she was outside the hotel having a cigarette when Cornejo approached and asked her for a cigarette. As Crystal turned to hand Cornejo a cigarette, Cornejo cut her face with what appeared to be a piece of glass.

Officer Eric Orozco searched for Cornejo and found him a block from the hotel. After a short pursuit, Orozco detained Cornejo. Crystal identified Cornejo at the scene of the arrest as the person who cut her on July 2, 2022.[2]

---

[2]     At trial, Crystal recanted her statements to police officers about the July 2022 incident. She testified that she did not know who cut her face.

At trial, the People showed Crystal photographs of herself that were taken while Crystal was at the hospital. The photographs were close-up images of the left side of Crystal's face. Crystal testified that the photographs accurately depicted her injury from the attack: they showed her "face was slashed" from the area near her nose to "all the way back to [her] scalp."

The People also showed Crystal another close-up photograph of the left side of her face that was taken some time after the incident. The photograph showed a thick scar on her face that starts at the middle of her cheek and extends behind her left ear. Crystal testified that the "injury" in the photograph is the same one that she had at trial.

Dr. Angela Zhu treated the cut on Crystal's face at LAC+USC Medical Center. The cut was a "large" 11-centimeter laceration which began under her left eye. It extended behind her ear and into the scalp. The cut went through the skin and "a little bit of the subcutaneous tissue," but did not reach the fat underneath. Zhu opined that a sharp object caused the cut.

To treat the cut, Zhu cleaned it and repaired it with stitches. Zhu then instructed Crystal to come back to the hospital for a follow-up appointment. Zhu also instructed Crystal to put an antibiotic ointment over it and keep it moisturized. Crystal did not come back for a follow-up appointment.

Zhu looked at the photograph of Crystal's face taken some time after the incident. Zhu acknowledged that the photograph showed a scar on Crystal's face. When asked whether the scar would be permanent, Zhu stated, "[It] depends on the type of care that she gives, but given that its location – on a sun-exposed part of her face, it would likely remain visible for some amount of time, at least a degree, to the naked eye." As to how long the scar

4

would remain visible, Zhu stated, "Generally these types of injuries take several years to lessen in appearance. Again, it depends on the type of care that she does for it. But because of the size, it will – it may be noticeable for at least several years unless camouflaged [by makeup]." Zhu repeated that she "would expect that a scar of this size would still be apparent for at least a few years to several years afterwards."

## II.   *Defense Evidence*

Cornejo did not testify or call any witnesses. The defense introduced into evidence records from the hospital that treated Crystal after the incident, showing Crystal told medical personnel that "a stranger" cut her.

## III.   *Section 1118.1 Motion, Verdict, and Sentencing*

At the close of the People's case-in-chief, the defense moved for a judgment of acquittal on the mayhem charge under section 1118.1. The defense argued there was no evidence that Crystal's injury was permanent. The trial court denied the motion.

The jury convicted Cornejo on all counts. After a bifurcated trial, the jury found several aggravating circumstances true. (Cal. Rules of Court, rules 4.421(a)(1)-(2), (b)(1)-(3), (b)(5).) Then, in a bench trial, the court found true Cornejo's prior strike conviction for attempted murder (§§ 187, subd. (a), 664).

The trial court sentenced Cornejo on count 1 to 16 years in prison, consisting of the upper term of eight years, doubled under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e)). The court imposed consecutive one-year sentences on each of counts 2 and 3 (one-third the middle term for each offense) but stayed these sentences under section 654.

5

## *DISCUSSION*

I.   ***There Is Sufficient Evidence To Support the Mayhem Conviction***

Cornejo contends the evidence is insufficient to support his mayhem conviction.  Specifically, he argues there is no substantial evidence that Crystal's disfiguring injury is permanent.  We disagree.

### A.   **Relevant legal standards**

"In assessing the sufficiency of the evidence, we review the entire record to determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. [Citation.]  'The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  In applying this test, we review the evidence in the light most favorable to the verdict and presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence . . . .  [W]e may not reverse for insufficient evidence unless it appears ' "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' "  (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1157-1158, superseded in part by statute on other grounds as stated in *People v. Villegas* (2023) 97 Cal.App.5th 253, 281, fn. 9, review granted Jan. 31, 2024, S283126, review dism. May 15, 2024.)  "The uncorroborated testimony of a single witness is sufficient to sustain a conviction unless the testimony is physically impossible or inherently improbable."  (*People v. Romero* (2019) 44 Cal.App.5th 381, 386 (*Romero*).)

6

"Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." (§ 203.) "Disfigurement of the body ' "impairs or injures the beauty, symmetry or appearance of a person or thing . . . [or] renders unsightly, misshapen or imperfect or deforms in some manner." ' " (*Romero, supra*, 44 Cal.App.5th at p. 387.) A person's head qualifies as a member of the body. (*People v. Newble* (1981) 120 Cal.App.3d 444, 449 (*Newble*).)

The modern rationale behind the offense of mayhem is " ' "the preservation of the natural completeness and normal appearance of the human face and body." ' " (*People v. Santana* (2013) 56 Cal.4th 999, 1004 (*Santana*).) "In other words, section 203 'protects the integrity of the victim's person.' " (*Ibid*.) "Section 203 pays particular attention to the face, recognizing the particular pain and emotional scarring that results from disfiguring a person's face." (*People v. Johnson* (2018) 21 Cal.App.5th 267, 281 (*Johnson*).)

"To prove mayhem based on a disfiguring injury, the injury must be permanent. [Citations.] Permanent scarring constitutes a disfiguring injury. [Citation.] An injury within the meaning of mayhem is still considered permanent if modern technology effectively repairs the injury. [Citation.] Accordingly, 'the possibility of medical alleviation [does] not . . . diminish one's culpability for infliction of an injury that would otherwise constitute mayhem.' " (*Romero, supra*, 44 Cal.App.5th at p. 387; see *Santana, supra*, 56 Cal.4th at p. 1007 ["the victim's disability must be more than 'slight and temporary,' " and must instead "be permanent"].)

Although " 'not every visible scarring wound' " constitutes mayhem (*Santana*, *supra*, 56 Cal.4th at p. 1004), "[t]he law of mayhem has evolved to such a degree that a number of cases have affirmed mayhem convictions based on relatively minor injuries." (*Johnson*, *supra*, 21 Cal.App.5th at p. 281 [bite to lip and eyelid]; e.g., *People v. Keenan* (1991) 227 Cal.App.3d 26, 35-36 [cigarette burns to breasts] (*Keenan*); *People v. Caldwell* (1984) 153 Cal.App.3d 947, 952 [bitten-through lower lip]; *Newble*, *supra*, 120 Cal.App.3d at p. 448 [three-inch facial laceration from a fingernail file]; *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 623 [five-inch facial wound from a knife] (*Goodman*); see *Santana*, at p. 1004 [cataloguing cases to show wide range of disfiguring injuries found to constitute mayhem].)

B.    **Analysis**

Sufficient evidence was adduced at trial that Crystal's injury is permanently disfiguring.  The evidence demonstrates Cornejo cut Crystal's face with a sharp object.  The cut went through her skin and subcutaneous tissue.  As Zhu noted, the cut was "large"—it covered nearly the entire length of Crystal's left cheek.  At some point, the cut turned into an equally lengthy scar.  Cornejo thus "caused a disfiguring injury on a sensitive and prominent feature on [Crystal's] face.  Indeed, the language of the [mayhem] statute singles out . . . the face, as worthy of special protection." (*Johnson*, *supra*, 21 Cal.App.5th at p. 281; see *Keenan*, *supra*, 227 Cal.App.3d at p. 36 ["if the burns had been inflicted on Ms. H.'s face there would be no question that mayhem had been committed"]; *Goodman*, *supra*, 84 Cal.App.3d at p. 625 ["The facts before us show a victim whose face is terribly marred, probably for life, with all attendant emotional and even economic disabilities"].)  A jury could reasonably conclude that a

scar that was still visible on Crystal's face three months after the injury constituted a permanent disfiguring injury.[3] (See *Johnson, supra*, 21 Cal.App.5th at pp. 271-272 [victim's testimony that she continued to have scar on her face four months after defendant bit her was enough to satisfy mayhem's requirement of permanent injury]; see also *Keenan, supra*, 227 Cal.App.3d at p. 36, fn. 6 [cigarette burn scars remaining on victim's breasts after three and one-half months "assume[d]" to be permanent absent evidence to the contrary].) Further, from our review of the photographs of Crystal's injury that were shown to the jury, depicting both Crystal's injury before she received stitches and then once a scar had formed, we conclude a reasonable juror could have found her injury was permanently disfiguring.

Contrary to Cornejo's argument, Zhu's testimony does not contradict the conclusion that Crystal's scar is permanent. Cornejo argues that Zhu's testimony on the issue of permanency was "equivocal." Zhu stated that whether Crystal's scar is permanent "depends on the type of care" that Crystal gives it. But the possibility that medical care could lessen the appearance of the scar " '[does] not . . . diminish one's culpability for infliction

---

[3] During Crystal's testimony, the People showed Crystal a photograph of her scar that was taken some time after the incident. The People asked, "Was this a photograph that was recently taken within the last week or so?" Crystal answered, "It was when the detective came to my friend's house to ask me to come to court." The People then asked, "That injury that we see, that's the same injury that you have; correct?" Crystal responded, "Yeah."

9

of an injury that would otherwise constitute mayhem.' " (*Romero*, *supra*, 44 Cal.App.5th at p. 387.)

Zhu also testified that "because of the size," and "its location – on a sun-exposed part of her face," Crystal's scar "may be noticeable for at least several years unless camouflaged [by makeup]." The word "may" in Zhu's statement does not make Crystal's permanent disfigurement impossible or improbable. "In a criminal prosecution, ' "[a] medical diagnosis based on probability . . . is admissible; the lack of scientific certainty does not deprive the medical opinion of its evidentiary value." ' " (*People v. Chavez* (2021) 69 Cal.App.5th 159, 167.) Moreover, Zhu subsequently stated she "would expect" the scar to "still be apparent for at least a few years to several years afterwards." Testimony that an injury is likely or probably permanent is sufficient to satisfy the permanency requirement. (*Newble*, *supra*, 120 Cal.App.3d at pp. 448, 453 [trier of fact could reasonably find mayhem was committed where doctor testified laceration on victim's face was "likely to leave a scar"]; *Goodman*, *supra*, 84 Cal.App.3d at pp. 623, 625 [upholding mayhem conviction where evidence suggested scar on victim's face at trial was "probably" permanent].) Therefore, the record discloses substantial evidence to support the verdict.

II. ***The Denial of Cornejo's Section 1118.1 Motion Was Proper***

Cornejo contends the trial court erred in denying his section 1118.1 motion as to the mayhem charge. Cornejo's argument focuses entirely on the trial court's reasoning in denying the motion. Based on the trial court's reference to Zhu's testimony as " 'somewhat vague,' " Cornejo argues "[i]t is clear the trial court did not believe the evidence was substantial with

10

respect to the element of permanent disfigurement." The claim lacks merit.

We must affirm the trial court's ruling if it reaches the correct result, regardless of the reasoning the court employed. (*People v. Zapien* (1993) 4 Cal.4th 929, 976; *People v. Fruits* (2016) 247 Cal.App.4th 188, 205.) The trial court did not err in denying Cornejo's section 1118.1 motion because there was sufficient evidence of mayhem.

"Section 1118.1 provides in pertinent part: 'In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal.' [¶] An appellate court reviews the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction. . . . Review of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point." (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

Cornejo made his section 1118.1 motion at the end of the People's case-in-chief. Afterward, the defense introduced Crystal's hospital records to show Crystal told doctors a "stranger" cut her. The defense did not call any witnesses. We have already reviewed the People's evidence in our discussion of whether the evidence was sufficient to support the mayhem conviction. "This evidence also demonstrates that the trial court

did not err in denying [Cornejo's] section 1118.1 motion." (See *People v. Maciel* (2013) 57 Cal.4th 482, 522.)

### DISPOSITION

The judgment is affirmed.




STONE, J.

We concur:




SEGAL, Acting P. J.




FEUER, J.